**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Roderick D. HALL, Defendant and Appellant.**

No. 14234.

Supreme Court of South Dakota.

Considered on Briefs Feb. 14, 1984.

Decided July 3, 1984.

Thomas H. Harmon, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

David L. Braun of Gors & Braun, Pierre, for defendant and appellant.

MORGAN, Justice.

This appeal is from a conviction for driving or being in actual physical control of a vehicle while under the influence of alcohol in violation of SDCL 32–23–1(2). The appellant and defendant in this case, Roderick D. Hall (Hall), bases his appeal on two contentions. First, Hall asserts that the trial court committed prejudicial error by admitting into evidence incriminating statements obtained prior to a reading of the *Miranda* warning. *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Second, Hall contends the trial court committed prejudicial error by refusing to give Hall's proposed jury instructions. We affirm.

Shortly after three o'clock a.m. on January 16, 1983, a South Dakota Highway Patrol Officer (Officer) came upon a silver Buick Regal (Buick) parked in the middle of a main street intersection in Harrold, South Dakota. A short time before, he had noticed the same vehicle parked in front of a bar a block away. The Officer noticed that the Buick was not running and its lights were off. He parked behind the Buick and as he approached on foot he observed Hall sitting in the front seat behind the steering wheel, slumped over to the right halfway between a vertical and horizontal position. The Officer attempted to open the car doors and found them locked. He then knocked on the window to get Hall's attention. When Hall awoke, he grabbed the shift lever, either to pull himself up straight or in an attempt to put the car in gear; Hall and the Officer contradict each other on this point. The Officer asked Hall to open the door or the window and Hall had some difficulty. The Officer observed that the key was already in the ignition and he testified at the suppression hearing that "first, he (Hall) tried to put the car in gear, .... then tried to roll down the window

and couldn't get the window rolled down, I guess the car had electric windows, and he was trying to roll them down without turning the ignition on. Finally, turned the ignition switch on and got the window rolled down and I talked to him then."

As the Officer checked Hall's driver's license he made a number of observations regarding Hall's condition: (1) Hall appeared uncoordinated, mixed up and confused, (2) Hall's eyes appeared glassy and bloodshot, (3) Hall's speech was slurred, and (4) the Officer detected the odor of alcohol. The Officer testified at the suppression hearing that, based on his observations, he suspected that Hall was under the influence of alcohol and Hall was not free to leave from this point in the investigation onward. In an attempt to find out why the car was parked in the middle of the street, the Officer asked Hall what the problem was. The ' Officer testified that Hall was still in the vehicle at the time he asked Hall this question and that Hall's response implied that he had driven the car from in front of the bar down Main Street one block to the middle of the intersection to make a U-turn in preparation for heading home.

It was apparently at this point that the Officer asked Hall to accompany him to the patrol car and observed that Hall staggered as he walked. Once inside the patrol car, the Officer turned on a tape recorder, without informing Hall of its presence, and asked him to perform a series of verbal sobriety tests. Hall either refused or failed each test. Hall was then asked to blow into the Portable Breath Tester. He refused and became belligerent. At that point, the Officer arrested Hall for DWI, handcuffed him and left the scene. When he reached the highway on the way out of town the Officer stopped, read Hall the *Miranda* warning and continued on to Pierre. At the Hughes County Jail, Hall's booking procedure was video taped, again without his knowledge or consent.

A suppression hearing was held pursuant to Hall's motion to suppress his incrimina-

ting statements, the recordings made in the arresting officer's car, and the video tape recordings taken during Hall's booking procedure. A second motion hearing was held one day before trial to consider Hall's motion in limine in which he requested the court to enter pretrial orders prohibiting the State from presenting evidence regarding: (1) his refusal to submit to chemical sobriety tests and from mentioning chemical or blood tests in any manner, (2) his refusal to submit to certain field sobriety tests, including the Portable Breath Test, and (3) precluding any comment by the State on these tests. Hall also moved that the trial court suppress: (1) all incriminating statements he made while he was in custody but was unadvised of his *Miranda* rights, (2) all evidence regarding audio tape or video tape recorded evidence, and (3) all evidence of Hall's prior criminal record.

■ After reviewing the evidence and arguments presented at the suppression hearings, the trial judge adopted relevant findings of fact and conclusions of law. The trial court concluded among other things that Hall's initial statements to the officer before he entered the patrol car, and during the earliest stages of the investigation, were not the result of a custodial interrogation and were freely and voluntarily made. The trial court denied all motions to suppress with the proviso that "to the extent the audio and video recordings include statements by the defendant either referring to a refusal of the chemical test or which are the result of custodial interrogation prior to the advising of *Miranda* rights, those statements shall be removed from the tapes before the tapes may be submitted to the jury." When a trial court has made a finding on whether or not a particular statement was voluntarily given, that finding is binding on this court unless it is clearly erroneous. *State v. Williamson*, 349 N.W.2d 645 (1984); *State v. Hintz*, 318 N.W.2d 915 (S.D.1982); *State v. DuBois*, 286 N.W.2d 801 (S.D.1979); *State v. Lyons*, 269 N.W.2d 124 (S.D.1978). *See State v. Williamson*, 342 N.W.2d 15 (S.D. 1983). Moreover, the evidence must be considered in a light most favorable to sup-

port a trial court's denial of a motion to suppress. *State v. Kiehn*, 86 S.D. 549, 199 N.W.2d 594 (1972).

The first issue considered on this appeal is whether the trial court committed prejudicial error by admitting into evidence incriminating statements Hall made before the *Miranda* warning was given.

■ The law is clear that any suspect taken into custody or deprived of his freedom in any significant way must be informed of his constitutional rights. *Miranda, supra*, cited in *DuBois, supra*. The trial court in this case properly excluded any recorded incriminating statements made prior to the *Miranda* warning. The law is also settled, however, that in the absence of a custodial situation *Miranda* warnings are not required prior to commencing an interrogation. *DuBois, supra*, citing *Oregon v. Mathiason*, 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977); *State v. Roadifer*, 346 N.W.2d 438 (S.D.1984). Law enforcement officers do not have to give *Miranda* warnings to every person routinely questioned during the course of an investigation. *DuBois, supra*.

■ The test for determining whether *Miranda* warnings are necessary is whether the person questioned is in custody or deprived of the freedom to leave. *State v. Bruske*, 288 N.W.2d 319 (S.D.1980) citing *Oregon v. Mathiason, supra*. *See also State v. Bartunek*, 323 N.W.2d 121 (S.D. 1982) (an appellant is not entitled to *Miranda* warnings before being asked whether he was the driver of a vehicle involved in a one-car accident).

■ This court looks to various criteria to distinguish custodial from noncustodial interrogations and to determine whether *Miranda* warnings must be given, including: (1) probable cause to arrest, (2) subjective intent or perception of the defendant, (3) the focus of the investigation, (4) the nature of the interrogator, (5) the nature of the suspect, (6) the time and place of the interrogation, (7) the nature of the interro-

gation, and (8) the purpose of the interrogation. *State v. Branch,* 298 N.W.2d 173 (S.D.1980).

■ When the officer approached the Buick and got Hall's attention he was merely investigating into the reason for the car's presence in the middle of the intersection. His first question was, "what is the problem?" Hall's incriminating statement, that he had come down to the intersection to make a U-Turn, from which the Officer inferred that Hall had driven the car, was made in response to a reasonable investigatory question. As the trial judge stated at the suppression hearing, the question was "nothing more than good police procedure."

■ The original obvious offense was traffic-related. This court has implied that even in custodial interrogations statements are not prejudicial unless the nature of the officer's question is directed to secure an admission or confession. *Branch, supra.* The Officer's question was appropriate and oriented toward a legitimate purpose; he wanted to know what problem resulted in the car's presence in the intersection so that it could be cleared. Considering the relevant factors of this case, it appears: first, that when the Officer approached the car, aroused Hall, observed him struggle to open the window and asked what the problem was, there was not yet sufficient probable cause for arrest. Hall's condition could have resulted from some physical malady other than intoxication. Second, the Officer's knowledge or belief that Hall was not free to leave, prior to his initial question to determine the problem, is irrelevant; the important consideration is Hall's perception and intent regarding his freedom to leave. *See Branch, supra; Bruske, supra.* If Hall believed he was as innocent as he professed at trial he could hardly have perceived any limitation on his freedom at the time of the Officer's initial question. Hall was sitting in his brother's car, in a familiar town, with his brother not far away; this situation is not the type of custodial interrogation contemplated in *Miranda.* Third, the focus of the initial investigation was to determine why the car was in the intersection and to get it moved. The Officer did not approach the vehicle with a preconceived focus on Hall or on a DWI arrest. Next, the record does not indicate that the Officer threatened Hall or coerced the statement. In sum, nothing in the record indicates that this was the type of interrogation contemplated in *Miranda.* *See State v. Neal,* 476 S.W.2d 547 (Mo. 1972). The Officer's inquiry into the problem behind Hall's presence in the intersection and Hall's response were part of general on-the-scene questioning and not within the reach of the Fifth Amendment privilege against self-incrimination or the additional protection afforded that privilege by *Miranda, supra.* *See Bartunek, supra.*

■ Finally, we note that the admissibility of Hall's incriminating statement is not crucial even though it is the only direct evidence that Hall drove the car. SDCL 32-23-1(2),[1] the DWI statute, does not require the State to show that Hall actually drove the car; it need only show that Hall was "in actual physical control of any vehicle while: ... Under the influence of an alcoholic beverage ...." SDCL 32-23-1(2). The trial court properly instructed the jury on the meaning of "actual physical control."[2] The instruction distinguishes

---

1. SDCL 32-23-1 provides, in pertinent part:
   A person may not drive or be in actual physical control of any vehicle while:
   ....
   (2) Under the influence of an alcoholic beverage[.]

2. Instruction No. 10 reads:
   A person "drives" a vehicle within the meaning of these instructions when, by operating one or more of the controls of the vehicle, he causes the same to move or affects its movement in some manner or direction.
   A person is in "actual physical control" of a vehicle within the meaning of these instructions when the vehicle is operable and he is in position to manipulate one or more of the controls of the vehicle that cause it to move or affects its movement in some manner or direction. It means existing or present bodily restraint, directing influence, domination or regulation of the vehicle. It means such con-

driving a vehicle from being in "actual physical control" of a vehicle, either of which is sufficient for conviction under SDCL 32-23-1(2) if the other elements are present. Therefore, suppression of Hall's statement implying that he drove the car while intoxicated would not preclude a conviction on the DWI charge if the evidence showed that he was in "actual physical control" of the vehicle. This court held in *State v. DuBray*, 298 N.W.2d 811 (S.D. 1980), that where a defendant was found alone and asleep on the driver's side of a vehicle with no one else present who could have driven the vehicle and the vehicle had been observed parked a short distance away from its eventual resting place, the defendant was in "actual physical control" of the vehicle. Although in this case the vehicle was not running, as was the pickup in *DuBray*, the key was in the ignition and the vehicle was easily driven out of the way. Hall was sitting in the driver's seat and although he was slumped over, the vehicle controls were within his reach; Hall completely dominated the Buick, the key was in the ignition, the doors were locked, he could have sat up and driven off at any time and no one else could have controlled the vehicle unless Hall relinquished his control. Thus, even if the trial court erred when it denied the suppression motion, the error was harmless, other evidence adequately supports the conviction. *Matter of N.J.W.*, 273 N.W.2d 134 (S.D.1978); *see Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Circumstantial and direct evidence are of equal weight and all of a crime may be proven by circumstantial evidence. *State v. Herrald*, 269 N.W.2d 776 (S.D.1978).

■ The second and final issue Hall raises on this appeal questions whether the trial court committed prejudicial error when it refused to give Hall's proposed jury instructions on incriminating admissions of a defendant and on the use and effect of expert testimony. In *State v.*

*Grey Owl*, 295 N.W.2d 748 (S.D.1980), we set out a two-prong test for determining when a conviction must be reversed for trial court's failure to give a requested instruction. First, the evidence presented at trial must warrant the instruction. Second, the appellant has the burden to show that not only error, but prejudicial error, resulted from the failure of the trial court to give his proposed instruction; i.e., that the jury might and probably would have returned a different verdict.

■ On the first point, appellant proposed South Dakota Pattern Jury Instruction 1-16-3:

The guilt of a defendant may not be established alone by any (confession or) admission made by him outside of this trial. Before any person may be convicted of a criminal offense, there must be proof, independent of any such statement, that the crime in question was committed, but it is not necessary that such independent proof include proof as to the identity of the person by whom such offense was committed.

While the trial court may well have given the proposed instruction under the evidence adduced regarding Hall's admission to having driven the car to the intersection, his conviction clearly did not hinge on the admission. As we have noted, simply being in control of the car, which was established beyond doubt, was sufficient to sustain the conviction and we are not convinced that the jury would have returned a different verdict. Therefore, if the trial court did commit error, it was not prejudicial.

■ On the second point, Hall complains of the trial court's refusal to give his proposed instruction on the treatment of expert testimony. He asserts that because the State's witnesses, the arresting officer and the Hughes County jailer were qualified to testify as expert witnesses and were therefore allowed to state their opinions on the extent of Hall's inebriation, his proposed instruction concerning experts and

---

trol as would enable the defendant to actually operate his vehicle in the usual and ordinary manner. "Actual physical control" of a vehicle results, even though the vehcile (sic) mere-

ly stands motionless, so long as a person keeps the vehicle in restraint or is in a position to regulate its movements.

experts' opinions was warranted. In this case, both law enforcement officers rendered opinions based upon their personal perceptions of the defendant and recited facts establishing that they had previously observed intoxicated persons and had training regarding identification of intoxicated persons. Training and characterization as an expert are not required in order to determine whether a person is under the influence of alcohol. The State did not request to have either officer qualified as an expert and Hall did not object to their opinion testimony or to the admission of opinions by nonexperts. SDCL 19–15–1 provides that nonexperts may testify regarding opinions or inferences rationally based on their perceptions. The evidence, therefore, did not warrant the instruction.

The trial court's denial of Hall's motion to suppress with the incorporated exclusion of recorded statements referring to the refusal of the chemical test or incriminating recorded statements made prior to *Miranda* warnings and the trial court's refusal of Hall's proposed jury instructions were correct and were not abuses of judicial discretion.

The conviction is affirmed.

All the Justices concur.