Edward McDOWELL, Petitioner
and Appellant,

v.

Herman SOLEM, Warden, South Dakota
State Penitentiary, et al.,
Respondents and Appellees.

No. 16612.

Supreme Court of South Dakota.

Considered on Briefs Sept. 14, 1989.

Decided Oct. 25, 1989.

Phillip O. Peterson, Thomas H. Frieberg, Frieberg, Rudolph, Peterson & Travis, Beresford, for petitioner and appellant.

Jeff Masten, Canton, for respondents and appellees.

WUEST, Chief Justice.

Edward McDowell (McDowell) appeals a circuit court order which denied McDowell's petition for a Writ of Habeas Corpus. The proceedings arise from the trial of McDowell on the charge of first-degree murder. We affirm.

McDowell and his wife, Barbara, were married in 1972. Shortly after their marriage, McDowell and his wife moved to South Dakota and settled in the southeastern portion of the state. In early 1981, McDowell was hired as the Chief of Police for Tea, South Dakota. During his employment as Chief of Police, McDowell met Mrs. Darlene Plucker (Plucker) and the two became close friends. As time progressed, the relationship between McDowell and Plucker became more intimate. The evidence reflects that Plucker and McDowell maintained not only a sexual relationship, but also a financial and business relationship wherein Plucker would loan McDowell money from her personal account and also from the business account in which McDowell, Plucker, and their respective spouses were partners.

The record indicates that in 1982, McDowell was spending more money than he was earning. In early 1983, the evidence reflects that McDowell was very much in debt and that Plucker was no longer able to furnish him with money to extricate him from his financial predicament as she had been accustomed to do. According to Plucker, who testified for the state and against McDowell, it was at this time that the two of them began to devise plans to murder McDowell's wife. At trial, it was suggested that McDowell would benefit financially from the death of his wife as she had a vested retirement account and life insurance in the amount of $100,000. Heather McDowell (Heather), the daughter of Edward and Barbara McDowell, was the named beneficiary under the policy.

The plan to murder McDowell's wife was finalized on June 15, 1983. On that day, McDowell begged Plucker to kill his wife and stated that if she did not do so, he would either leave the community or kill himself. Plucker succumbed. With the "old city gun" that McDowell had given her, Plucker went to McDowell's residence at approximately 10:00 p.m. where she was invited in by Barbara McDowell. Pursuant to Edward McDowell's instructions, Plucker eventually pulled out the gun, walked up closely behind Barbara McDowell, and shot her in the back of the head. Plucker then quickly returned to her own home.

According to Plucker, McDowell telephoned her at about 11:45 p.m. that night, advising her to wash her hands in gasoline so as to avoid any trace of elements resulting from the gun fire. McDowell allegedly had been at the race track while the crime was taking place. Shortly after the phone call, McDowell went to the Plucker residence where he stayed with Plucker and her husband until about 1:00 a.m. At this time, McDowell returned to his apartment, and, after seeing what had happened, he called the Pluckers and told Darlene to come right over. McDowell then called the sheriff who later arrived at McDowell's residence and began his investigation.

The police investigated this murder for several months until finally on September 26, 1983, Plucker made a full confession to the authorities pursuant to a plea agreement. On October 20, 1983, a Lincoln County grand jury indicted McDowell for first-degree murder. After a change of venue, trial was held in Pennington County. On April 29, 1983, the jury returned a verdict finding McDowell guilty of first-degree murder. On May 8, 1984, the trial court sentenced McDowell to life imprisonment. McDowell filed a timely notice of appeal from judgment and sentence of the court, and this judgment and sentence was affirmed by this court in *State v. McDo-*

*well,* 391 N.W.2d 661 (S.D.1986) (*McDowell I*).

McDowell raises several issues on appeal. He first alleges that he was denied a fair trial due to alleged misconduct on the part of the prosecutor. McDowell further alleges that the content of certain taped interviews of him should not have been admitted at trial because he claims the law enforcement officers who conducted the interviews failed to give him *Miranda* warnings. McDowell also alleges that he was denied his right to an impartial jury as the trial judge failed to sequester or properly instruct the jury regarding the extensive media coverage. It is also alleged by McDowell that the cumulative errors and omissions by his trial attorney denied McDowell his constitutional right to effective assistance of counsel. Lastly, McDowell contends that the cumulative effect of the errors of the trial judge, the prosecutor and his own attorney effectively denied him his right to a fair trial.

Before addressing the aforementioned issues, our scope of review in habeas corpus proceedings should be noted. "Ordinarily, post conviction habeas corpus can be used only to review: (1) whether the court had jurisdiction of the crime and the person of the defendant; (2) whether the sentence was authorized by law; and (3) in certain cases, whether an incarcerated defendant has been deprived of basic constitutional rights." *Goodroad v. Solem,* 406 N.W.2d 141, 144 (S.D.1987); *Application of Kiser,* 83 S.D. 272, 158 N.W.2d 596, 602 (1968). The issues in this case concern whether the incarcerated defendant, McDowell, has been deprived of basic constitutional rights.

We first address the issue of whether McDowell was denied his right to a fair trial due to alleged prosecutorial misconduct. On appeal, McDowell cites several acts of the prosecutor as allegedly constituting prosecutorial misconduct. These acts include: (1) references made by the prosecutor during the opening statement and throughout the trial to the effect that McDowell would benefit financially from the death of his wife; (2) introduction of photographs by the prosecutor allegedly

for the sole purpose of inflaming the passions of the jury; (3) introduction of a tape recording containing prejudicial material and failure to connect this tape with foundational evidence; and (4) numerous impermissible statements and inappropriate actions during the course of the trial. McDowell asserts that these alleged incidents of prosecutorial misconduct, either considered alone or cumulatively, had the effect of denying him the right to a fair trial. We disagree.

■ As to the first allegation of prosecutorial misconduct, McDowell argues that the prosecutor represented to the jury that McDowell was to directly receive the benefits under his wife's life insurance policy after her death. We find this contention to be without merit. The record reflects that the prosecutor, in his opening argument, stated that Heather McDowell (the daughter of Edward and Barbara McDowell) was the beneficiary under the life insurance contract, and not McDowell himself. Furthermore, any implication by the prosecutor that McDowell may have indirectly benefitted financially from the death of his wife was not totally without merit. Although Heather McDowell was the beneficiary under the life insurance contract, it was possible for McDowell, as her father, to obtain control of those funds albeit with court supervision. Therefore, we find no prosecutorial misconduct based upon the first allegation.

■ The second allegation of prosecutorial misconduct concerns the prosecutor's introduction of photographs which McDowell alleges were introduced for the sole purpose of inflaming the passions of the jury. With respect to this argument, it should be noted that the admission of photographs lies within the sound discretion of the trial court. *State v. Layton,* 337 N.W.2d 809, 813 (S.D.1983); *State v. Hawk,* 292 N.W.2d 346 (S.D.1980). Photographs are admissible when they portray anything that a witness may describe and when they assist in a verbal description of objects or conditions and are relevant to some material issue. *State v. Muetze,* 368 N.W.2d 575, 586 (S.D.1985). Here, the state presented

its case on the basis that McDowell persuaded Plucker to kill his wife and that McDowell gave Plucker certain instructions as to how to commit this murder. The trial court may have deemed the photographs to be relevant to the issue of whether Barbara McDowell was killed according to the alleged instructions of McDowell. We believe, therefore, that the trial court did not abuse its discretion in admitting these photographs. Thus, having made this conclusion, we cannot now conclude that the prosecutors introduction of these photographs constituted an act of prosecutorial misconduct.

McDowell's third allegation of prosecutorial misconduct concerns the playing of a taped conversation which the prosecutor believed would prove the existence of a conspiracy between McDowell and his brothers. The playing of this tape to the jury, as well as the tape's content and prejudicial effect was fully briefed and argued in the appeal of McDowell's conviction. After due consideration of this issue in *McDowell I*, we disposed of this argument stating that the playing of this tape, even when considered in light of other allegations of prosecutorial misconduct, did not rise to the level of denying McDowell his right to a fair trial. We see no reason to conclude differently in this appeal. As we stated in *McDowell I*, it is not required that the defendant receive a perfect trial, only that he receive a fair trial. *McDowell I, supra,* at 666, *quoting Brown v. United States,* 411 U.S. 223, 231–32, 93 S.Ct. 1565, 1570, 36 L.Ed.2d 208 (1973).

■ The final allegation of prosecutorial misconduct concerns a number of alleged impermissible statements and inappropriate actions which McDowell claims had the effect of denying him his right to a fair trial when considered cumulatively. Such actions included the playing of a tape in which reference was made to the fact that McDowell had taken a polygraph examination. Although references should not be made to polygraph examinations, we find it difficult to believe that this particular reference prejudiced McDowell in any manner because the reference was to the effect

that McDowell had passed the examination. Other actions of the prosecutor falling under this category concern matters that were either brought up on the first appeal or simply are lacking in merit.

Based upon the foregoing reasoning and the fact that several of the allegations of prosecutorial misconduct have been previously considered and disposed of by us in *McDowell I,* we conclude that any misconduct of the prosecutor certainly did not rise to the level of denying McDowell his right to a fair trial, even when considered in a cumulative manner.

■ McDowell's second argument on appeal concerns the trial court's admission of a taped interview of McDowell. McDowell claims that these tapes should not have been admitted into evidence as he was not given his *Miranda* warnings by the law enforcement officers who conducted these interviews. The law is clear that any suspect taken into custody or deprived of his freedom in any significant way must be informed of his constitutional rights. *State v. Hall,* 353 N.W.2d 37, 40 (S.D.1984); *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Absent a custodial situation, *Miranda* warnings are not required prior to commencing an interrogation. *Hall, supra.* The court looks to various criteria to distinguish custodial from noncustodial interrogations and to determine whether *Miranda* warnings must be given, including (1) probable cause to arrest, (2) subjective intent or perception of the defendant, (3) the focus of the investigation, (4) the nature of the interrogator, (5) the nature of the suspect, (6) the time and place of interrogation, (7) the nature of the interrogation, and (8) the purpose of the interrogation. *Hall, supra.*

In applying the aforementioned criteria to the present case, we believe the evidence establishes that McDowell was not in the custody of the police when the alleged interviews took place, nor was he deprived of his freedom in any significant manner during the course of these interviews. The record reflects that McDowell willingly agreed to partake in these interviews with the police. McDowell either drove himself

to these interviews or was taken by a relative. During the time period in which these interviews took place, McDowell would frequently contact the sheriff offering his ideas as to possible motives or explanations regarding the murder of his wife. Additionally, at all times during the course of these interviews, McDowell was employed as a police officer, carried a badge and pistol, still had a patrol car, and no restrictions were placed on his travel. There is nothing in the record which indicates these interviews were hostile, or that McDowell could not have left these interviews when he so desired. On the basis of these facts, we find that the trial did not err in allowing these taped interviews to be played to the jury as the law enforcement officers were not required to give McDowell his *Miranda* warnings prior to these interviews.

In his third argument on appeal, McDowell alleges that he was not afforded the right to an impartial jury. He argues that because of the extensive media coverage, the jury should have been sequestered or properly admonished in order to assure that the jury would not be prejudiced. With respect to this argument, we note that the decision to sequester a jury is entrusted to the sound discretion of the trial judge. *Mastrian v. McManus*, 554 F.2d 813, 818 (8th Cir.1977); *State v. Disbrow*, 266 N.W.2d 246, 254 (S.D.1978). In order to obtain a new trial based on a refusal to sequester, the defendant must show a substantial likelihood of prejudice. *McManus, supra* at 819; *Disbrow, supra*.

We believe that an application of the facts of this case to the aforementioned law demonstrates that the trial court did not abuse its discretion in deciding not to sequester the jury. Furthermore, we believe that the trial court properly admonished the jury in order to assure that they would not be prejudiced. The record reflects that each time the jury members separated, the trial judge admonished them

pursuant to SDCL 23A–24–5.[1] Furthermore, during the voir dire examination, the judge specifically instructed each juror that was passed for cause not to watch, read, or listen to news accounts of the trial. Also, once the jurors had been finally selected, the judge inquired as to whether each of them had faithfully adhered to his prior instruction regarding the media. Each juror answered in the affirmative. The jury was further cautioned about coming into contact with media coverage concerning the trial at the end of the fourth and eighth day of the trial. The trial lasted approximately eight weeks. We believe these facts clearly indicate that the jury was properly admonished concerning their exposure to the media. Furthermore, in light of these admonishments, and also in light of the absence of any showing of a substantial likelihood of prejudice, we believe that the trial court did not abuse its discretion in deciding not to sequester the jury.

McDowell has also alleged on appeal that he was denied his right to receive effective assistance of counsel as provided in the Constitution of the United States. The *Strickland* test is controlling in South Dakota when reviewing an ineffective assistance of counsel claim. *Luna v. Solem*, 411 N.W.2d 656, 658 (S.D.1987); *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to succeed under the *Strickland* test, the defendant must show two requirements:

> First, . . . that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as "the counsel" guaranteed the defendant by the Sixth Amendment. Secondly, . . . that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

1. SDCL 23A–24–5 provides:
   Jurors must also, at each adjournment of court, whether permitted to separate or kept in charge of officers, be admonished by the court that it is their duty not to converse, among themselves or with anyone else, on any subject connected with the trial, or to form or express any opinion thereon, until the case is finally submitted to them.

*Luna, supra (quoting Strickland).* Prejudice exists when " '... there is reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *Luna, supra (quoting Strickland); Woods v. Solem,* 405 N.W.2d 59, 61 (S.D.1987).

McDowell alleges that his attorney failed to object to certain photographs offered by the prosecution, that he only requested a sequestration of the jury once, that he failed to object to certain phone records offered by the prosecution, and that he failed to object to the corroboration instruction thus preventing this court from considering that issue on appeal in *McDowell I.* McDowell also alleges that the defense counsel, who was also the counsel for the appeal, failed to raise several issues on appeal. Having reviewed the record in this case, we do not believe that the facts support the conclusion that McDowell was denied his right to effective assistance of counsel.

■ First of all, contrary to McDowell's contention, the record reflects that the defense counsel did object to the introduction of the photographs offered by the prosecutor, and this objection was overruled. Furthermore, although the defense counsel may have only requested that the jury be sequestered once during the trial, there is no evidence that the trial court's response would have been any different upon further requests. Finally, even if we were to hold that the defense counsel should have objected to the introduction of the telephone records, and that other issues should have been raised on appeal, these errors would not sufficiently undermine our confidence in the outcome in the first action. Therefore, we must conclude that McDowell was not denied his right to effective assistance of counsel.

McDowell finally argues that the cumulative effect of all of the alleged errors of the trial judge, the prosecutor and the defense attorney essentially resulted in the denial of McDowell's right to a fair trial. We have given due consideration to each of the arguments set forth by McDowell on this appeal, and we believe that even when considered in a cumulative manner, the allegations do not support a finding that McDowell was denied his constitutional right to a fair trial. Again, we must reiterate, it is not required that the defendant receive a perfect trial, only that he receive a fair trial. *Brown v. United States,* 411 U.S. 223, 231–32, 93 S.Ct. 1565, 1570, 36 L.Ed.2d 208 (1973).

Judgment is affirmed.

All the Justices concur.