STATE of South Dakota, Plaintiff
and Appellee,

v.

Scott William DAVI, Defendant
and Appellant.

No. 17620.

Supreme Court of South Dakota.

Argued Oct. 6, 1992.

Decided July 21, 1993.

Mark Barnett, Atty. Gen., Ann C. Meyer, Asst. Atty. Gen., Pierre, for plaintiff and appellee.

Patricia C. Riepel, Minnehaha County Public Defender, Sioux Falls, for defendant and appellant.

JOHNSON, Circuit Judge.

## PROCEDURAL HISTORY AND ISSUES

Defendant Scott Davi (Davi) was found guilty of two counts of first degree murder, three counts of first degree burglary, and one count of first degree rape. In a subsequent court trial, the Honorable R.D. Hurd found Davi to be a habitual offender pursuant to SDCL 22-7-7. Davi received four life sentences without parole, a fifteen year sentence and a twenty year sentence, all sentences to run concurrently. Davi appeals,[1] alleging trial court error in the following respects:

(1) Admission of hearsay evidence, denying Davi his right to confront witnesses and his right to a fair trial.

(2) Admission of prior bad act testimony, denying Davi a fair trial.

(3) Admission of hearsay statements that Diane was afraid of Davi and plain

error in failing to give continuing admonitions and cautionary instructions regarding this evidence.

(4) Failure to grant motion for mistrial based on prosecutorial misconduct.

(5) Failure to grant motion for JNOV based on insufficient evidence to support the verdict.

(6) Error based on cumulative effect of trial court error.

We affirm the convictions on all counts but remand to the trial court with the direction that it vacate one of the sentences for first degree murder in light of *Wilcox v. Leapley,* 488 N.W.2d 654 (S.D.1992).[2]

## STATEMENT OF FACTS

Scott Davi (Davi) and Diane Davi (Diane) married in April 1988, and divorced in February 1990. Despite the divorce, the couple continued to date and sometimes slept together. Although Davi had relationships with other women, he became angry and jealous whenever Diane saw other men.

Diane severed the relationship in early October 1990, when she learned that Davi's live-in girlfriend, Maren Defoe, was pregnant. Davi would not let the relationship end. He followed her to work, waited by her car and made numerous phone calls to her apartment and her parents' home. Diane's annoyance at Davi's persistence eventually turned to fear.

During the weekend of October 20–22, 1990, Diane and her son Chad stayed at Diane's parents' house because of her growing fear of Davi. In the middle of the night on October 22, Diane's apartment was burglarized. The perpetrator slashed her waterbed and her son's. The only item missing from the apartment was a vibrator which Davi had given Diane as a gift and which she kept in a location known only to Diane and Davi. The box to this item was found on the floor and later thrown in the

---

1. Davi's appellate counsel is different than that at the trial court level. Similarly, the state has new counsel at the appellate level.

2. At oral argument we granted leave for the parties to submit supplemental briefs on the

question of multiple convictions for one murder. Counsel agreed in their briefs that based upon *Wilcox v. Leapley, supra,* Davi could only be convicted on one charge of murder.

trash by Diane. Significantly, within ten days, investigators would find the vibrator box next to Diane's body.

Diane promptly obtained an ex parte domestic abuse protection order from Judge Robert Amundson who scheduled a hearing for November 5, 1990. Davi was served with the order the same day. Concerned about the consequences of the protection order, Davi contacted his parole officers, Pamela Jarding and Rick Holloway, who told Davi to stay away from Diane.

Despite the protection order, Diane continued to receive harassing and hang-up phone calls. On October 25, she called the police who came to her apartment to investigate the complaint. During the police visit Davi called her at least twice, once saying "Sorry, wrong number" and once ringing and then hanging up. The next day Diane asked her landlord to change the locks on her apartment because she knew Davi still had a key.

On October 29 at 4:00 a.m., in direct violation of the protection order, Davi confronted Diane as she entered her work place at Harold's Photography. He gave her a music box and said, "Diane, please don't send me back to prison."

Also during this time period, Davi told several people, including Sharon Ferrucci, Diane's close friend, that "he wasn't going to give Diane up" and "he did not want Diane to go." At the same time, he was very angry at Diane for rejecting him—angry enough to think about killing her. He told his ex-girlfriend, Kelly Davis, that he had purchased a crossbow with 170 pounds of pressure and that he was going to shoot Diane between the eyes with it.[3] He also told Davis that "he knew a man out of Sioux City that could or would kill Diane."

On November 1, Davi anonymously sent Diane another music box, twelve red roses and one yellow rose. On November 2, the day of her death, Diane worked a 4:30 a.m. to 11:00 a.m. shift and then returned to her apartment. Just after she left Harold's, Diane's co-worker, Becky Livingston, saw Davi's blue sports car drive by Harold's.

When Diane arrived at home she made several phone calls to friends and a nurse at the clinic. The last contact she made with anyone prior to her murder was at 12:05 p.m. Around 12:30 p.m. a co-worker, Richard Moerke, dropped by Diane's apartment. When he knocked on the door no one answered although he could hear noises inside the apartment. Moerke went around the back of the apartment and saw that the screen was pulled back from Diane's bedroom window but thought this was from the earlier break-in.

Diane's body was discovered on her bed about 5:30 that afternoon. She had been brutally beaten, raped and strangled. A few weeks later her family discovered that her wedding rings, given to her by Davi, were missing from the apartment, following the November 2 murder.

At the trial, Davi presented alibi evidence that he was at the Sioux Empire Mall at the time of the murder. However, two eyewitnesses had seen Davi sitting in his car outside Diane's apartment at two different times on November 2.

## ISSUE I

WHETHER DAVI WAS DENIED HIS RIGHT TO A FAIR TRIAL AND HIS RIGHT TO CONFRONT WITNESSES WHEN THE TRIAL COURT ADMITTED HEARSAY EVIDENCE UNDER THE RESIDUAL HEARSAY RULE?

Davi argues that the trial court erred when it admitted hearsay statements and that admitting such statements violated his right to a fair trial and his right to confront witnesses. The trial court allowed various witnesses to testify to statements made by Diane during the two weeks preceding her death, admitting these statements under the residual hearsay exception, SDCL 19–16–35.

3. Police searched Davi's apartment subsequent to his arrest and found a loaded crossbow and several arrows.

Several witnesses testified that Diane had reported to them that a vibrator, given to her by Davi and last used by her and Davi, was missing after the October 22 burglary, and that she had kept it in a secret location in her apartment. Several witnesses testified to statements by Diane that she believed Davi had burglarized her apartment, slashed the waterbeds and stolen the vibrator.

Officers Polzien and Menkevich testified to statements Diane made to them that she had been receiving hang-up and harassing phone calls and that she believed Davi had made them.

The trial court received into evidence Diane's handwritten petition for a domestic abuse protection order, in which she stated she believed Davi had burglarized her apartment and would continue to abuse her because he had "flipped." In addition, various witnesses testified to statements made by Diane that Davi had pleaded with her not to send him back to prison after the protection order had been issued.

### Right to a Fair Trial

Although the hearsay rule provides that hearsay statements are inadmissible, the exceptions to the general rule are numerous. Hearsay which does not fall within one of the specific exceptions to the general rule may be admissible under SDCL 19–16–35, the residual hearsay rule, if certain conditions are met.[4]

■ The primary requirement of SDCL 19–16–35 is that the declarant be unavailable to testify at trial. In addition, such hearsay must meet five criteria in order to be admissible under this rule:

(1) There must be sufficient "circumstantial guarantees of trustworthiness."

(2) The hearsay must provide evidence of a "material fact."

(3) The hearsay must be "more probative" than other available evidence.

(4) The "general purposes of these rules and the interests of justice" must be served by admission of the hearsay.

(5) The adverse party must have notice.

Matter of R.S.S., 474 N.W.2d 743, 749 (S.D. 1991).

■ In addition to the express language of our statute, this Court has previously laid out several additional factors to be considered by the trial court in determining the admissibility of hearsay evidence:

(1) the written or oral nature of the evidence;

(2) the character of the statements;

(3) the declarants' relationship to the witness;

(4) the declarants' motivation in making the statements;

(5) the circumstances under which the declarants made the statements.

State v. Luna, 378 N.W.2d 229 (S.D.1985).

■ In reviewing the trial court's admission of hearsay evidence, we use an abuse of discretion standard. We will uphold the decision of the trial court unless it is clear that the court abused its discretion in admitting the hearsay evidence. "Although the ultimate decision to admit or not admit evidence is reviewable under the 'abuse of discretion' standard, the court's preliminary determination of whether the hearsay evidence is reliable will not be overturned unless it is clearly erroneous." Matter of

---

4. SDCL 19–16–35 provides:
A statement not specifically covered by any of §§ 19–16–30 to 19–16–34, inclusive, but having equivalent circumstantial guarantees of trustworthiness, is not excluded by § 19–16–4 if the declarant is unavailable as a witness and if the court determines that
(1) the statement is offered as evidence of a material fact;
(2) the statement is more probative on the point for which it is offered than any other evidence for which the proponent

can procure through reasonable efforts; and
(3) the general purposes of these rules and the interests of justice will best be served by the admission of the statement into evidence. However, a statement may not be admitted under this section unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the state-

*R.S.S., supra,* 474 N.W.2d at 749 (citing *State v. Luna, supra* ).

At a pretrial motion hearing the court determined the reliability of each statement, and then weighed the probative value of the statement against its prejudicial impact.

 The court found the statements about the missing vibrator, which had been taken in the October 22 burglary, reliable because they were made to a police officer in his official capacity, and that similar statements to friends were reliable because of the personal nature of the subject matter. Additionally, the fact that the empty vibrator box was found next to her body provided further indicia of reliability. The court found that the statements were relevant to the issues of motive and identity. We find sufficient evidence in the record that the trial court did not abuse its discretion in admitting the hearsay statements concerning the missing vibrator.

The court found that the statements by Diane to Officer Menkevich that Davi had burglarized her home were reliable because they were made to a police officer, that false reporting was a crime, and because people are generally truthful and honest in statements to police officers. The court then found these statements extremely relevant, and although prejudicial, not unfairly prejudicial for the limited purpose of showing identity. The court reserved ruling on the admissibility of similar statements to friends until it heard the testimony in camera.[5]

The court allowed Diane's statements of hang-up and harassing phone calls and her stated belief that Davi was making the calls as evidence of motive. The court reasoned that Diane was sufficiently familiar with her ex-husband's voice and that evidence of such calls, after the restraining order was obtained, demonstrated Davi's continuing obsession with Diane. The court found these statements admissible for the limited purpose of motive.

The court stated it was not concerned with the reliability of the statements contained in Diane's petition for a protection order, granted by Judge Amundson, but instead focused on the probative value and potential prejudice. The court decided that the statements would be admissible with a limiting instruction that they were to be received for Diane's state of mind only and not as evidence that anything alleged in the protection order actually happened. As to a portion of the statements in the protection order which the court found to be unduly prejudicial to Davi, the court held that it be stricken.

The trial court failed to make a reliability finding on Diane's statements to several people that Davi had approached her before work, given her a music box, and asked her not to send him back to prison. Instead, the court focused on the purpose for admitting the statements and reflected upon the probativeness and the prejudicialness. After lengthy discussion with counsel, the court held that the statements were admissible for the purpose of proving motive, finding the statements probative on Davi's motive to commit the murder. The court found these statements were not unfairly prejudicial and did not violate Davi's constitutional right against self-incrimination.

Davi argues that the admission of the above statements was prejudicial and allowed the jury to conclude that the Davi not only committed the burglary on October 22, but also committed the murder on November 2. It cannot be denied that these statements were prejudicial. Any statement against a defendant is prejudicial. However, the court found that these statements were not *unfairly* prejudicial and found that the probative value outweighed the prejudicial impact. Although the statements may have invited the jury to conclude that Davi was the one who murdered Diane, the court specifically noted that there were other reasonable inferences which defense counsel could argue.

---

ment and the particulars of it, including the name and address of the declarant.

**5.** The trial court did hear the testimony of Sharon Ferrucci outside the presence of the jury. As to the other witnesses, there was no outside hearing, but defense counsel made no objection to the witnesses' testimony at the time of trial.

Although not a perfect record, we cannot say that the trial court abused its discretion in allowing these hearsay statements. Looking at the motion hearing record as a whole, there is adequate proof that the trial court met the requirements of SDCL 19–16–35 and the additional safeguards of *State v. Luna, supra.* We would advise in the future that trial courts enter written findings and orders to assist meaningful appellate review.

### Right to Confront Witnesses

Davi also claims that even if the hearsay statements were properly admitted under the residual hearsay rule, SDCL 19–16–35, the trial court erroneously admitted them in violation of his constitutional confrontation rights.

The right to confront witnesses is a basic state and federal right.[6] In *Idaho v. Wright,* 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990), the United States Supreme Court addressed the constitutional protections of the confrontation clause. In *Wright* the defendant was charged with two counts of lewd conduct with a minor. At trial, the defendant's three year old child was found to be unavailable to testify due to her young age. Statements made by the child to a doctor were admitted under the residual hearsay exception. The defendant was convicted on both counts and appealed the conviction concerning the three year old child based on the denial of her right to confront witnesses. The Idaho Supreme Court reversed the defendant's conviction and the United States Supreme Court affirmed the reversal.

The court began its analysis by recognizing its earlier rule laid out in *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980).

> Once a witness is shown to be unavailable, "his statement is admissible only if it bears adequate indicia of reliability. Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness."

*Id.* at 66, 100 S.Ct. at 2539, 65 L.Ed.2d at 608 (footnote omitted).

The *Wright* Court found that the particularized guarantees of trustworthiness could not be equated with the equivalent guarantees of trustworthiness required to admit hearsay evidence under the residual hearsay exception. The court stated:

> Hearsay statements admitted under the residual exception, almost by definition, therefore do not share the same tradition of reliability that supports the admissibility of statements under a firmly rooted hearsay exception. Moreover, were we to agree that the admission of hearsay statements under the residual exception automatically passed confrontation clause scrutiny, virtually every codified hearsay exception would assume constitutional stature, a step this Court has repeatedly declined to take. (citations omitted).

*Id.* 497 U.S. at 817–818, 110 S.Ct. at 3148, 111 L.Ed.2d at 653–654.

In *Wright,* the court stated that the "particularized guarantees of trustworthiness" required for admission under the confrontation clause must be drawn from the totality of circumstances surrounding the making of the statement and rendering the declarant particularly worthy of belief. *Wright,* 497 U.S. at 820, 110 S.Ct. at 3149, 111 L.Ed.2d at 656.

The court found that the various statements made by Diane contained the "equivalent guarantees of trustworthiness" as well as the "particularized guarantee of trustworthiness" required for both the residual hearsay rule and the confrontation clause.

---

**6.** The Sixth Amendment to the Constitution of the United States provides, in part:

In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him[.]

Art. VI, § 7 of South Dakota's Constitution provides:

In all criminal prosecutions the accused shall have the right to ... meet the witnesses against him face to face[.]

The court found on the record that the hearsay statements were both reliable and probative. The statements to various police officers were reliable because it is a crime to falsely report to police officers. In addition, the court found that the statements concerning the vibrator were trustworthy because of the personal nature of the subject.

We hold that the trial court did not err in admitting these hearsay statements. Although we hold that Davi's rights under the confrontation clause were not violated, any alleged error, if established, would not give rise to reversal. In *Wright*, the Supreme Court stated, "[W]e think the presence of corroborating evidence more appropriately indicates that any error in admitting the statement might be harmless ..." *Id.* 497 U.S. at 822–823, 110 S.Ct. at 3150–3151, 111 L.Ed. at 657.

The prosecution presented much corroborative evidence which would indicate, as in *Wright*, that any error in admitting the hearsay statements would be harmless. Evidence that the vibrator was never found, but its empty box was found near Diane's body supports Diane's statements concerning the missing vibrator. Jim Hanson's eyewitness testimony which identified Davi at Diane's apartment corroborates Diane's statements that she believed Davi had burglarized her apartment on October 22, and were further bolstered by her similar statements on her application for a domestic abuse protection order. Davi's own admissions of calling Diane and hanging-up supports Diane's statements of the same nature. Evidence of the music box and Davi's parole officers' testimony that Davi was very concerned about his parole status after he was served with the protection order, as well as Davi's own admission, supports Diane's statements that Davi gave her a music box and asked her not to send him back to prison.

7. SDCL 19–12–5 provides:
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be

This independent evidence was corroborative, and the statements were, if anything, cumulative. Davi's counsel never raised this objection and therefore, it will not be considered. Davi was not denied his right to a fair trial or his right to confront witnesses by admission of hearsay evidence.

### ISSUE II

WHETHER DAVI WAS DENIED HIS RIGHT TO A FAIR TRIAL WHEN THE TRIAL COURT ADMITTED PRIOR BAD ACTS EVIDENCE?

Davi next argues that the trial court erred in admitting certain bad acts evidence used for the impermissible purpose of painting him as a bad person. The prosecution offered, and the court permitted evidence of prior bad acts under SDCL 19–12–5.[7]

The trial court permitted evidence that Davi had gone to George Murray's apartment one morning after Diane had spent the night there. Davi pounded on the door until Diane finally let him in. After Davi entered, he demanded if George had slept with Diane and yelled at George, "If I can't have her, nobody can." Davi then proceeded to slap Diane, knock her down on the couch and forcefully drag her out of Murray's apartment. The court also allowed evidence that Diane had been receiving harassing and hang-up phone calls from Davi, and that Davi had broken into Diane's apartment on October 22 and vandalized her property.

Before admitting prior bad acts, the court must determine:

(1) That the proffered evidence is relevant; and

(2) That the probative value of the evidence exceeds its prejudicial effect.

*State v. Kerkhove*, 423 N.W.2d 160 (S.D. 1988); *State v. Thomas*, 381 N.W.2d 232 (S.D.1986); *State v. Reutter*, 374 N.W.2d

admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

617 (S.D.1985). "Even if prior bad act evidence is found to be relevant to a material issue in the case under SDCL 19–12–5, it may still be excluded if its prejudicial effect substantially outweighs its probative value." *Matter of R.S.S.*, 474 N.W.2d at 747 (citing SDCL 19–12–3); *State v. Klein*, 444 N.W.2d 16 (S.D.1989). The trial court must perform the probative-prejudicial balancing on the record. *State v. Eagle Hawk*, 411 N.W.2d 120 (S.D.1987).

As we have stated in numerous cases, if we find that the trial court has made the required evaluation and findings on the record, our standard of review is abuse of discretion. *Matter of R.S.S., supra; State v. Itzen*, 445 N.W.2d 666 (S.D.1989); *State v. Klein, supra; State v. Bradley*, 431 N.W.2d 317 (S.D.1988); *State v. Basker*, 468 N.W.2d 413 (S.D.1991).

▪ The court heard the evidence and arguments regarding the admissibility of the incident at George Murray's apartment. The court found that the evidence was relevant to show Davi's state of mind and continuing obsession with Diane. Although these purposes are not explicitly stated in SDCL 19–12–5, they are proper purposes for bad acts evidence. As stated before, "the list of exclusions in this statute is not exhaustive as evidenced by the language 'such as.' " *State v. Werner*, 482 N.W.2d 286, 289 (S.D.1992); *State v. Dale*, 439 N.W.2d 98, 109 (S.D.1989).

The court next balanced the probativeness with the prejudice involved in admitting the evidence. Under the impression that the incident had occurred the summer prior to the murder, the court found the evidence to be unfairly prejudicial because the remoteness of the event diluted its probative value, painting Davi as a bad person rather than relating to an element of the offense. The prosecution then represented that the incident had occurred about one month prior to the murder and that Davi had said to Murray, "If I can't have her, nobody can." After reconsideration, the court found that the probative value did outweigh the prejudice.

Davi argues that because the court's initial balancing took time into consideration its determination rested solely on that factor when it reconsidered the incident. However, "[p]roximity in time and similarity of conduct are only factors that may be considered by the trial judge in deciding whether to admit evidence of prior bad acts; they are not requirements for admission." *United States v. Drew*, 894 F.2d 965, 970 (8th Cir.1990), *cert. denied*, 494 U.S. 1089, 110 S.Ct. 1830, 108 L.Ed.2d 959 (1990).

▪ The court also found that particular evidence, elicited from Officer Menkevich, was admissible under SDCL 19–12–5. The court found that Diane's statements to Officer Menkevich were relevant to the issue of Davi's motive, as they showed Davi's obsession with Diane even after the protection order was in existence. Next, the court weighed the evidence and found that the probative value outweighed the prejudice to Davi.

▪ The court found that the evidence relating to the October 22 burglary was relevant. The court found this evidence extremely relevant to the issue of identity of the murderer. In weighing the probative value against the prejudice, the court recognized that such evidence was prejudicial, but not unfairly prejudicial. In addition, although this evidence could raise an inference that the same person that burglarized Diane's apartment murdered her, it was also evidence that went to prove an element in the October 22 burglary charge and was thus not bad acts evidence. Since all counts were tried together, this evidence was extremely relevant and probative on the jury's determination of that count.

We find that the court did make the necessary findings of relevancy and probativeness required by SDCL 19–12–5 when it allowed bad acts evidence against Davi. The court did not abuse its discretion in admitting such evidence.

Davi raises a plain error assertion because his counsel failed to object at trial to the admissibility of the incident at George Murray's apartment. Since we have deter-

mined that the court did not err in admitting the bad acts, we need not address this claim.

## ISSUE III

### WHETHER DAVI WAS DENIED HIS RIGHT TO A FAIR TRIAL WHEN THE TRIAL COURT ADMITTED HEARSAY STATEMENTS REGARDING DIANE'S FEAR OF DAVI?

Davi's argument on this issue is twofold. First, he alleges that the court erred when it admitted several hearsay statements showing Diane's fear of Davi in the weeks preceding her death. Second, Davi alleges that even if these statements were properly admitted, it was plain error for the court not to issue continuing admonitions and cautionary instructions.

*Admissibility of Hearsay Statements*

■ The court admitted the hearsay statements under SDCL 19–16–7.[8] Before such evidence is admitted the court must find, on the record and outside the presence of the jury, that the evidence is relevant and probative. *Bradley, supra.*

■ In the pretrial motion hearing, the court found the statements to be relevant to show Diane's state of mind prior to her death. The trial court did not espouse any other purpose for the admission of these statements. The potential problem that arises upon admission of statements regarding the decedent's fear of a defendant is that the jury will likely misuse these statements as evidence of the state of mind of the defendant rather than the decedent. This is exactly what Davi argues occurred in this case. In *United States v. Brown,* 490 F.2d 758, 774 (D.C.Cir.1973), the court found that in order for extra judicial hearsay declarations to be relevant and admissible to show the state of mind of the victim, the victim's state of mind must be relevant to some material issue in the case. Examples of

issues that would justify an inquiry into the victim's state of mind were claims of self-defense, suicide, accidental death or any other plausible issue. *Id.* at 766.

In this case there were no claims of self-defense, suicide or accidental death which would invite inquiry into Diane's fear of Davi. Although the court specifically stated that evidence regarding Diane's fear of Davi was not being admitted for the purpose of proving the identity of the murderer, it appears that identity of the murderer was the only reason these statements were admitted.

In *Bradley,* 431 N.W.2d 317, evidence of the decedent's fear of the defendant was admitted on the issue of whether the decedent was actually murdered because there was no physical evidence of the cause of death. We upheld the trial court but stated, "Had the 'fear' applied only to identity, reversal might be in order, per *Brown,* as the victim's state of mind has nothing to do with identity—it's really putting the cart before the horse." *Id.* at 325.

Use of the victim's fear of defendant is an improper use as applied only to identity. We hold that it was error for the trial court to admit the testimony of several witnesses regarding Diane's fear of Davi prior to her death. The only issue this hearsay evidence supported was identity of the murderer. This was an improper use of the hearsay statements per our opinion in *Bradley.*

The error of the court does not warrant reversal, however, because the error was harmless. Substantial evidence was presented which, if believed, would independently prove that Diane was afraid of Davi. Evidence was presented that Diane was staying on and off with her parents, including the weekend of the October 22 burglary, and was riding to work with a co-worker instead of driving alone. Dorothy

---

**8.** SDCL 19–16–7 states:

A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition, such as intent, plan, motive, design, mental feeling, pain, and bodily health, is not excluded by § 19–16–4, even though the declarant is available as a witness, but a statement of memory or belief to prove the fact remembered or believed is excluded unless it relates to the execution, revocation, identification, or terms of declarant's will.

Pederson testified that she had picked Diane up for work on the morning of October 22 and that when they arrived at Harold's Davi was waiting in his car for Diane, who was dropped off at the door where other co-workers were ready to lock the door behind her as she ran in. Diane had intended to apply for a protection order against Davi even before she was aware that her apartment had been burglarized. Diane applied for the protection order the same day she discovered the burglary. Diane's landlord testified that she had requested him to change the locks on her apartment door because Davi had a key to her apartment, and that the locks were then changed. In addition, Sharon Ferrucci, a close friend of Diane's, testified that she and Diane had worked out a code to alert Ferrucci if Davi was in Diane's presence. Diane's stating, "How's your rabbit?" to Ferrucci would indicate that Davi was in the apartment and that Ferrucci should call the police. Ferrucci also testified that Diane and her son did not accompany Ferrucci and her children to the mall for the traditional Halloween party, because she did not wish to run into Davi. Officer Menkevich testified that she had investigated Diane's complaint that she had been receiving harassing and hang-up phone calls from Davi.

All of this evidence independently establishes that Diane was afraid of Davi and was taking deliberate actions to avoid Davi. This evidence properly invited the jury to infer that Diane was afraid of Davi. We hold that although it was error for the trial court to admit the hearsay statements regarding Diane's fear of Davi for the purposes of identity, the error was harmless as the evidence was cumulative of other evidence presented independently at trial.

*Admonitions and Cautionary Instructions*

■ Davi next argues that even if the hearsay statements regarding Diane's fear of Davi were admissible, the court erred when it failed to give continuing admoni-

tions and cautionary instructions to the jury to consider the statements for a limited purpose. Davi's trial counsel did not object to the lack of limiting instructions nor did it offer any limiting instructions of its own. By failing to object, Davi did not preserve this issue for appeal so he asserts plain error.

■ Our South Dakota legislature has created the plain error rule in SDCL 23A–44–15.[9] In *State v. Brammer*, 304 N.W.2d 111, 114 (S.D.1981), we addressed the plain error rule and stated, "To recognize the rule, however, is not to say that every error that occurs at trial rises to the level of plain error, for the plain error rule must be applied cautiously and only in exceptional circumstances." Our inquiry must be whether or not the error affects Davi's *substantial* rights and thereby prejudiced him.

In light of our finding that there was sufficient evidence in the record to show that Diane was afraid of Davi, independent of Diane's statements of fear of Davi, we hold that this is not an appropriate place for the plain error rule. No substantial rights of Davi's were affected by the court's failure to give cautionary instructions and admonitions. The inference of Diane's fear of Davi was raised by substantial independent evidence.

## ISSUE IV

### WHETHER DAVI WAS DENIED HIS RIGHT TO A FAIR TRIAL DUE TO PROSECUTORIAL MISCONDUCT?

■ Davi next asserts that he was denied his right to a fair trial because of prosecutorial misconduct. Prosecutorial misconduct implies a dishonest act or an attempt to persuade the jury by use of deception or by reprehensible methods. *State v. Ashker*, 412 N.W.2d 97, 103 (S.D. 1987).

■ Davi cites several incidents of alleged prosecutorial misconduct, but we

---

**9.** SDCL 23A–44–15 provides:
 Plain errors or defects affecting substantial

rights may be noticed although they were not brought to the attention of a court.

must specifically address his assertion that the state deliberately violated an alleged oral agreement between the state and the defense not to use evidence that Davi had lied to his parole officers when asked if he had been in contact with Diane. When the evidence was elicited at trial during Davi's cross-examination, defense counsel did not object. The next day defense counsel objected and moved for mistrial. The court heard from both sides and found that the limits on the testimony regarding Davi's false statements to his parole officers had been interpreted differently by each side. As the motion for mistrial had not been preserved by timely objection, it was proper for the court to deny the motion for a mistrial. We cannot say that the prosecutor's acts were dishonest or attempted to persuade the jury by use of deception or by reprehensible methods. We are unable to say that any acts of the prosecutor resulted in prejudice so harmful as to have an effect upon the jury's verdict or Davi's rights.

In several instances where Davi cites prosecutorial misconduct, the state's actions were in direct response to Davi's own closing argument. The admonitions given by the court served to curtail any improper inference the jury may have taken from the closing arguments. We have reviewed the rest of Davi's assertions and find them to be unfounded.

## ISSUE V

### WHETHER THERE WAS SUFFICIENT EVIDENCE TO SUPPORT THE JURY'S VERDICT.

Davi asserts that the court erred when it failed to grant Judgment Notwithstanding the Verdict (JNOV) for the following reasons: (1) there was insufficient evidence to show that Davi was at the scene of the crime; (2) there was no direct physical evidence linking Davi to the scene of the crime; (3) Davi's alibi was given no weight by the jury contrary to law; and (4) the jury accepted the loose, flimsy and fictional arguments of the prosecution and ignored the appropriate burden of proof.

We have firmly established what our standard of review is for determining whether there was sufficient evidence to support the jury's verdict. "In determining the sufficiency of the evidence on appeal in a criminal case, the issue before this court is whether there is evidence in the record which, if believed by the jury, is sufficient to sustain a finding of guilt beyond a reasonable doubt." *State v. Davis*, 401 N.W.2d 721, 722 (S.D.1987); *State v. Ashley*, 459 N.W.2d 828 (S.D.1990). In making our determination, this Court will accept the evidence and the most favorable inferences fairly drawn therefrom, which will support the verdict. *State v. Sondreal*, 459 N.W.2d 435 (S.D.1990).

Looking at the entire record, there is sufficient evidence which, if believed by the jury, would sustain a finding of guilt beyond a reasonable doubt. On the burglary count, the state provided the testimony of Jim Hanson who testified that he saw Davi walking away from Diane's apartment at 3:00 a.m. on October 22, 1990. This evidence, if believed by the jury, placed Davi at the scene of the first burglary. On the rape, murder and burglary charges on November 2, 1990, the state provided testimony from Virginia Woldt and Deanna Thuringer, both tenants of Diane's apartment building, who saw Davi parked outside of Diane's apartment within a three hour span of the probable time that she was murdered. If believed by the jury, this testimony was sufficient to place Davi at the crime scene.

Second, Davi asserts that there was no direct physical evidence linking Davi to the scene of the crime. The state provided evidence regarding tests done on the semen stain which was found on Diane's thigh. The result of these tests eliminated 80% of the male population. Davi was within the remaining 20% of the male population that could have committed the rape and murder. That is physical evidence. In addition, circumstantial evidence is sufficient to sustain a murder and rape conviction. The state may prove all elements of the crime, including intent, by circumstantial evidence. *State v. Ashker*,

412 N.W.2d 97 (S.D.1987). There was an abundance of circumstantial evidence which, if believed by the jury, would sustain the convictions of Davi.

■ Third, Davi states that his alibi was given no weight by the jury contrary to law. Whether or not the jury believes a witness's testimony is within the province of the jury. The jury may reject in whole or in part a witness's testimony, including the defendant's. This is not contrary to law as provided by the jury instructions. The jury was within its province in rejecting the testimony of the alibi witnesses and believing the witnesses that placed Davi at the scene of the murder.

■ Fourth, Davi asserts that the jury accepted the loose, flimsy and fictional arguments of the prosecution and ignored the appropriate burden of proof. The court instructed the jury of the burden of proof required and that the state had to prove Davi's guilt beyond a reasonable doubt on each and every count. Davi argues that a conviction on circumstantial evidence cannot be sustained if the circumstances do not exclude every other reasonable hypothesis except that of the guilt of the defendant. This assertion is contrary to South Dakota law. In *State v. Ashley*, 459 N.W.2d at 832, we said that "to support a conviction of circumstantial evidence, it is not necessary to exclude every hypothesis of innocence." As we have previously stated, the jury was the trier of fact and found that there was sufficient evidence in the record to support Davi's convictions. We agree that there was sufficient evidence in the record to support these convictions. We hold that the court did not err in denying Davi's motion for JNOV.

## ISSUE VI

WHETHER DAVI WAS DENIED HIS RIGHT TO A FAIR TRIAL BASED ON THE CUMULATIVE EFFECT OF THE TRIAL COURT'S ERRORS?

■ Davi asserts that cumulative error by the court denied him his constitutional right to a fair trial. We have previously held that the cumulative effect of errors by the trial court may support a finding by the reviewing court of a denial of the constitutional right to a fair trial. *McDowell v. Solem*, 447 N.W.2d 646 (S.D. 1989). *See also State v. Dokken*, 385 N.W.2d 493 (S.D.1986); *State v. Bennis*, 457 N.W.2d 843 (S.D.1990). The question we must decide is whether, on a review of the entire record, Davi was provided a fair trial. As we have said numerous times, the defendant is not entitled to a perfect trial but rather a fair one. *State v. Smith*, 477 N.W.2d 27, 35 (S.D.1991); *McDowell v. Solem, supra.*

In light of our determinations on the foregoing issues and from our review of the entire record, we believe that Davi did receive a fair trial.

MILLER, C.J., and WUEST and HENDERSON, JJ., concur.

SABERS, J., concurs in part and dissents in part.

JOHNSON, Circuit Judge, for AMUNDSON, J., disqualified.

SABERS, Justice (concurring in part and dissenting in part).

Based on my writing in *Wilcox I* and *Wilcox v. Leapley*, 488 N.W.2d 654, 660–61 (S.D.1992) (*Wilcox II*), I would reverse and remand to the trial court to vacate one of the homicide convictions and one of the three burglary convictions because there was only one death and two burglaries.

For all of the reasons stated in my prior writings, it is simply wrong and improper to permit these "surplus" convictions to stand. Double convictions for single events are "improper" under *Wilcox II* and should be vacated before resentencing.