No. 88-515

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

ELWYN LAWRENCE PETERSON,

Defendant and Appellant.

'89 FEB 23 AM 9 48 FILED
ED S___, _LERK
MONTANA SUPREME COURT

APPEAL FROM: District Court of the Thirteenth Judicial District,
In and for the County of Carbon,
The Honorable Russell Fillner, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Gary L. Spaeth and John H. Bohlman, Red Lodge, Montana

For Respondent:

Hon. Marc Racicot, Attorney General, Helena, Montana
Kathy Seeley, Asst. Atty. General, Helena
Michael Alterowitz, County Attorney; Kent E. Young,
Deputy County Attorney, Red Lodge, Montana

Submitted on Briefs: Jan. 19, 1989

Decided: February 23, 1989

Filed:

_____
Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

Appellant Elwyn Lawrence Peterson appeals the judgment of the Thirteenth Judicial District, Carbon County, finding him guilty of driving or being in actual physical control of a vehicle upon the ways of this state open to the public, in violation of § 61-8-401(1)(a), MCA.

Peterson was arrested on September 5, 1986, near Silesia, Montana. Shortly after 7:00 a.m. that morning, a motorist stopped at the weigh station located on I-90 between Billings and the exit to Silesia. The motorist notified GVW Officer Rudy Gerke that there was "a drunk in an old brown Dodge right behind him." Officer Gerke then went to the side of the highway to look for the car. Approximately one minute later the motorist yelled "Here he comes" and the officer saw what he identified as a brown Dodge coming at him. While the officer did not get a good look at the driver, he noticed the driver appeared to be slumped over the steering wheel. Officer Gerke managed to see that the first four numbers of the license plate were 10-14, before he was forced to jump into the ditch, out of the way of the oncoming car. The officer observed the vehicle then veered and nearly went into the median before passing from the field of view. Officer Gerke then relayed the information he had to the Montana Highway Patrol.

Shortly before 9:00 a.m. that morning, Mike Schmang, an adult probation officer, noticed a brown car in the ditch near Silesia. Officer Schmang notified the Carbon County Sheriff's Office of the accident and then went to examine the vehicle. Shortly thereafter, Montana Highway Patrol Officer Lance Bourquin responding to Officer Gerke's report of a drunk driver arrived at the scene. Officer Bourquin noted the license plate number on the vehicle was 10-14696. Based

2

upon Peterson's admission that he had been driving the vehicle and his failure to pass field sobriety tests, Officer Bourquin placed Peterson under arrest.

Peterson was subsequently convicted in Justice Court. He appealed to the District Court which also found him guilty. He now appeals the judgment of the District Court on the ground that sufficient evidence did not exist to sustain his conviction for driving or being in actual physical control of a vehicle upon the ways of this state open to the public.

Initially, we note our function on such an appeal is whether there is substantial credible evidence "to support the defendant's guilt beyond a reasonable doubt." State v. Longacre (1975), 168 Mont. 311, 313, 542 P.2d 1221, 1222. We find substantial credible evidence exists in this case to sustain the conviction.

Peterson presents two arguments as to why we should find he was unable to exercise sufficient control over the vehicle to sustain his conviction. First, he was not the driver of the vehicle on the trip from Billings to Silesia, nor at the time it ran into the ditch. At trial Peterson testified that one Robert "Fuzzy" Routon was giving him a ride home from a party in Billings when a deer in the roadway forced them into the ditch. After the accident Peterson remained in the vehicle while Routon hitchhiked back to Billings to get help to pull the vehicle out of the ditch. Peterson then crawled from the back seat, where he had been sleeping, to the front seat to wait for Routon and went back to sleep. Peterson testified he was unable to obtain Routon to testify at trial, because Routon was out of the state looking for work.

Peterson's second argument is that he was not physically in a position to actually control the vehicle when

3

the officers arrived and arrested him. He contends the evidence shows the vehicle was off the highway, was turned off, and he was not behind the steering wheel or in a position to exert "actual physical control" over the vehicle.

Our examination of the record discloses several conflicts with these arguments. First, Peterson admitted on two separate occasions that he was the driver of the vehicle. Both Officers Schmang and Bourquin testified that Peterson admitted at the scene of the accident that he was the driver of the vehicle when it left the highway. Further, when Peterson was processed at the Sheriff's Office he again acknowledged he had been driving the vehicle. Both officers also testified they did not see any evidence at the scene that there had been anyone else there, prior to their arrival.

The fact Peterson was able to obtain an affidavit from Routon after the completion of the trial, stating he was the driver of the vehicle at the time it left the highway, is not convincing. This assertion directly conflicted with Peterson's admission on two separate occasions before law enforcement officers that he was the driver. In denying the appellant's motion for a new trial, the District Court examined the effect of the affidavit on the case. It found that Peterson was not diligent in obtaining Routon's presence for trial or in seeking a continuance when it was apparent he would not be available for trial. Further, this evidence was merely cumulative support of Peterson's contention at trial that he was not the driver of the vehicle. When the evidence presented at trial is conflicting,

> [I]t is the function of the trier of the facts, in this case the trial judge, to determine the credibility of the witnesses and the weight to be given their testimony and he may pick and choose which of the witnesses are to be

4

> believed from a consideration of all the evidence.

Longacre, 542 P.2d at 1222.

Here the trial court had the testimony of three law enforcement officers regarding a description of the manner in which the vehicle was driven and where it came to rest. The officers testified that Peterson made separate admissions that he was driving the vehicle and that the vehicle belonged to Peterson. The evidence showed that Peterson was unable to pass field sobriety tests and had ingested both alcohol and prescription drugs which react to alcohol. We find such evidence constitutes substantial credible evidence sufficient to support the judgment of the court.

Regarding Peterson's claim in his brief that he was not in a position to exert "actual physical control" over the vehicle, we find the evidence was to the contrary. Upon approaching the vehicle, Officer Schmang testified he observed the appellant in the driver's seat, slumped over to the right, with his feet in the area of the pedals. The vehicle was not running, but Peterson himself testified he had the keys in his pocket.

Peterson contends this Court should follow the decisions of other courts finding control over the vehicle is lacking where the defendant pulls off the travelled portion of the road and either turns off the vehicle or takes the keys out of the ignition. State v. Zavala (Ariz. 1983), 666 P.2d 456; State v. Smelter (Wash.App. 1984), 674 P.2d 690; State v. Bugger (Utah 1971), 483 P.2d 442. We decline to accept such precedent as controlling, particularly under the facts of this case. Rather, we look to Montana precedent for when a person may be found to have actual physical control of a vehicle. See, State v. Ruona (1958), 133 Mont. 243, 321 P.2d 615; State v. Taylor (1983), 203 Mont. 284, 661 P.2d 33.

5

In Taylor, the defendant was found stuck in a barrow pit off a Billings street with the vehicle running and the lights on. There the Court stated:

> Just as a motorist remains in a position to regulate a vehicle while asleep behind its steering wheel, so does he remain in a position to regulate a vehicle while asleep behind the steering wheel of a vehicle stuck in a borrow [sic] pit. He has not relinquished regulation of or control over the vehicle. It does not matter that the vehicle is incapable of moving. Movement of a vehicle is not required for "actual physical control." State v. Ruona, supra.

Taylor, 661 P.2d at 34.

Here Peterson was found in the driver's seat of a vehicle which had run off the road, with the keys to the vehicle in his pocket. In such a position he could regulate the movements of the vehicle. Appellant attempts to counter these findings by claiming he was lying down in the front seat and was not in a position to exercise "actual physical control." We find the evidence introduced at trial supports a finding that the appellant was in the driver's seat, but instead of slumping forward onto the steering wheel, he slumped to his right onto the middle of the seat. It would be ludicrous to rest the question of whether a person is in a position to exercise control over a vehicle upon the luck of a person as to the direction one falls when they "pass out."

Appellant further asserts this Court should endorse a policy decision found in the Zavala case encouraging a person, who believing his driving impaired pulls completely off the highway, turns off the key and sleeps until sober before proceeding. Such a responsible action should not subject a person to the possibility of being arrested for being in control, according to the appellant. Zavala, 666 P.2d at 459.

6

We disagree. The better policy is that a person should ascertain his ability to drive before climbing behind the wheel and terrorizing the roadways of this state. Further, the evidence does not support a finding that this was the situation in the present case. Peterson acknowledged he had left a party in Billings around 7:00 a.m. to go home to Silesia, twenty-four miles away. Along the way, eyewitness testimony established whoever was driving the car was seriously impaired and a hazard to anyone on or near the roadway. After driving over twenty miles in an impaired state, the driver of the vehicle finally ended up stuck in the ditch after running over a delineator post and off the highway. There was no turnout or intersecting road at the point where the vehicle left the roadway. Fortunately, no one was injured. We agree with the State's brief that no public policy exists which rewards that kind of luck.

The judgment of the District Court is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices