STATE of South Dakota, Plaintiff and Appellee,

v.

Thomas B. KITCHENS, Defendant and Appellant.

No. 17849.

Supreme Court of South Dakota.

Considered on Briefs on Oct. 8, 1992.

Decided April 14, 1993.

Mark Barnett, Atty. Gen., Frank Geaghan, Asst. Atty. Gen., Pierre, for plaintiff and appellee.

Timothy M. Engel of May, Adam, Gerdes & Thompson Pierre, for defendant and appellant.

PER CURIAM.

Thomas B. Kitchens (Kitchens) appeals his conviction for driving while under the influence of an alcoholic beverage (DUI). We affirm.

## FACTS

At approximately 10:20 p.m. on the night of September 20, 1991, a police officer for the City of Pierre, South Dakota, was dispatched to a local convenience store in order to investigate a person who had passed out in a pickup truck parked in the store's parking lot. When the officer arrived, he found the pickup in the parking lot as reported, parked approximately ten to fifteen feet south of a city street. Kitchens was "slumped over" the steering wheel of the pickup. His feet were on the floorboard on the driver's side of the vehicle. The pickup was not running and the keys were not in the ignition. There were no other persons in or around the pickup and there were "several" empty beer cans inside the vehicle.

The police officer woke Kitchens who took his hands off the steering wheel and, at the officer's request, got out of the pickup. Kitchens was unable to locate a driver's license, registration or proof of insurance and asked the officer if he was trying to arrest him for DUI. Kitchens told the officer he could not be arrested for DUI since his vehicle was not moving. The officer asked Kitchens to perform several field sobriety tests and, as a result of those tests, the officer formed the opinion that Kitchens was under the influence of an alcoholic beverage.

During the course of his investigation and prior to placing Kitchens under arrest, the police officer discovered the ignition key for the pickup in one of Kitchens' pants pockets. At approximately 10:43 p.m., the officer placed Kitchens under arrest for driving while under the influence of an alcoholic beverage. The officer read Kitchens the implied consent warnings and Kitchens agreed to take a blood test. The blood sample later revealed a percentage by weight of alcohol of 0.242 percent.

On November 13, 1991, State filed an information charging Kitchens with one count of driving or actual physical control of a vehicle while under the influence of alcohol (SDCL 32–23–1(2)) and an alternative count of driving or actual physical control of a vehicle while having 0.10 percent or more by weight of alcohol in his blood (SDCL 32–23–1(1)). Kitchens and State subsequently entered into a stipulation of facts and a trial to the court took place on December 17, 1991. The trial was confined to legal argument over the issue of whether Kitchens' conduct fell within the elements of the offense of actual physical control of a vehicle while under the influence of alcohol. On February 3, 1992, the trial court entered findings of fact and conclusions of law determining that Kitchens was guilty beyond a reasonable doubt of driving or being in actual physical control of a vehicle while under the influence of alcohol or while having 0.10 percent or more by weight of alcohol in his blood (SDCL 32–23–1). An amended judgment of conviction was entered on March 23, 1992, providing in pertinent part, "[i]t is therefore, the JUDGMENT of this Court that [Kitchens] is guilty of Driving While Under the Influence of an Alcoholic Beverage, in violation of SDCL 32–23–1(2) or (1)." Kitchens appeals.

## ISSUE

DID KITCHENS' PRESENCE IN HIS VEHICLE AT THE TIME OF HIS ARREST CONSTITUTE ACTUAL PHYSICAL CONTROL OF THE VEHICLE AS CONTEMPLATED BY SDCL 32–23–1?

SDCL 32–23–1(1) and (2) provide:

A person may not drive or be in actual physical control of any vehicle while:

(1) There is 0.10 percent or more by weight of alcohol in his blood as shown

by chemical analysis of his breath, blood or other bodily substance;

· (2) Under the influence of an alcoholic beverage[.]

These provisions prohibit the acts of driving or being in actual physical control of a vehicle while under the influence of an alcoholic beverage or while having 0.10 percent or more by weight of alcohol in the blood. Kitchens contends he was not in "actual physical control" of his vehicle on the night of his arrest because the keys to the pickup were not in the ignition and because there was no showing that he actually intended to operate the vehicle.

In *State v. Hall*, 353 N.W.2d 37, 41–42 n. 2 (S.D.1984), we approved a jury instruction defining "actual physical control" of a vehicle under SDCL 32–23–1 as follows:

A person is in "actual physical control" of a vehicle within the meaning of these instructions when the vehicle is operable and he is in a position to manipulate one or more of the controls of the vehicle that cause it to move or affects its movement in some manner or direction. It means existing or present bodily restraint, directing influence, domination or regulation of the vehicle. It means such control as would enable the defendant to actually operate his vehicle in the usual and ordinary manner. "Actual physical control" of a vehicle results, even though the [vehicle] merely stands motionless, so long as a person keeps the vehicle in restraint or is in a position to regulate its movements.

Kitchens is correct in his assertion that this court has never determined whether "actual physical control" of a vehicle requires that the keys be in the ignition. *See, Hall, supra* (key was in the ignition). *See also, State v. Remacle*, 386 N.W.2d 38 (S.D.1986) (keys in the ignition); *Petersen v. Dept. of Public Safety*, 373 N.W.2d 38 (S.D.1985) (keys in the ignition); *State v. DuBray*, 298 N.W.2d 811 (S.D.1980) (motor running); *Kirby v. State Dept. of Public Safety*, 262 N.W.2d 49 (S.D.1978) (motor running).

Although we have not yet determined whether the keys must be in the ignition for a defendant to have actual physical control of a vehicle, several jurisdictions have addressed this question. In *State v. Peterson*, 236 Mont. 247, 769 P.2d 1221 (1989), the defendant was found in the driver's seat, slumped over to the right, with his feet in the area of the pedals. The vehicle was not running but the defendant himself later testified he had the keys in his pocket. As to the defendant's claim he was not in a position to exert "actual physical control" over the vehicle, the Montana Supreme Court held that, "[h]ere Peterson was found in the driver's seat of a vehicle which had run off the road, with the keys to the vehicle in· his pocket. In such a position he could regulate the movements of the vehicle." *Peterson*, 769 P.2d at 1223.

More closely on point is the decision of the North Dakota Supreme Court in *City of Fargo v. Theusch*, 462 N.W.2d 162 (N.D. 1990). In *City of Fargo*, the defendant was found sleeping on the right side of the bench seat of his pickup truck which was parked in a restaurant parking lot. The ignition key was found in his right front coat pocket. The defendant was convicted of being in actual physical control of the vehicle while under the influence of alcohol. He argued on appeal that a person asleep in a vehicle with the ignition keys in his coat pocket cannot be convicted of being in actual physical control of a vehicle. The North Dakota Court held:

Actual physical control of a vehicle does not solely depend on the location of the ignition key. The location of the key is one factor among others to consider. Here the defendant was found sleeping in his vehicle which was parked in a restaurant parking lot, the keys were within easy reach, and the officer saw indicia of intoxication when he awakened the defendant. "An intoxicated individual who gets into his vehicle to sleep poses a threat of immediate operation of the vehicle at any time while still intoxicated." The purpose of the "actual physical control" offense is a preventive measure. We have long construed the actual physical control statute to broadly prohibit

any exercise of dominion or control over a vehicle by an intoxicated person. In [*State v. Schuler*, 243 N.W.2d 367 (N.D. 1976)] we upheld a conviction of a defendant who was seated behind the wheel of her vehicle, which was partially in the ditch and "high-centered", apparently unable to move. A vehicle which is temporarily high-centered does not eliminate the possibility that it may soon be extricated and the driver may again set out on an inebriated journey. This same rationale is applicable here because the defendant could possibly wake up, find the keys in his pocket and set out on an inebriated journey at any moment.

We conclude that the trial court did not error in finding that [defendant] was in actual physical control of his vehicle. *City of Fargo*, 462 N.W.2d at 163–64 (citations omitted).

The foundations of South Dakota law on the "actual physical control" prohibition are nearly identical to those pronounced by the North Dakota Supreme Court in *City of Fargo, supra.* In *Kirby*, 262 N.W.2d at 51–52, we quoted *Hughes v. State*, 535 P.2d 1023, 1024 (Okla.Crim.App.1975), for the proposition that:

"It is our opinion that the legislature, in making it a crime to be in 'actual physical control of a motor vehicle while under the influence of intoxicating liquor,' intended to enable the drunken driver to be apprehended before he strikes ...

\* \* \* \* \* \*

We believe that an intoxicated person seated behind the steering wheel of a motor vehicle is a threat to the safety and welfare of the public. The danger is less than where an intoxicated person is actually driving a vehicle, but it does exist. The defendant when arrested may have been exercising no conscious violation with regard to the vehicle, still there is a legitimate inference to be drawn that he placed himself behind the wheel of the vehicle and could have at any time started the automobile and driven away. He therefore had 'actual physical control' of the vehicle within the meaning of the statute. We, therefore, find there was

sufficient competent evidence to support the verdict."

*Accord, Remacle, supra.*

■ Here, just as in *City of Fargo, supra*, Kitchens was found sleeping behind the steering wheel of his vehicle which was parked in a convenience store's parking lot, close to a city street. The keys were within quick and easy reach in one of his pockets. No one else could have had control of the vehicle unless Kitchens first relinquished his. The officer saw indicia of intoxication when he administered the field sobriety tests. At any time, Kitchens might have awakened, found the keys in his pocket and set out on an inebriated journey. Based upon South Dakota's own settled law in *Kirby*, and application of similar policy principles in *City of Fargo, supra*, we hold that the trial court did not err in finding that Kitchens was in actual physical control of his vehicle regardless of the fact that the keys were not in the ignition.

Kitchens also argues that the elements of "actual physical control" include the additional element of a specific intent to drive the vehicle. He submits that proof of this element was lacking in this case and, therefore, the trial court erred in adjudicating him guilty of the actual physical control offense.

■ We must heed our own statute. SDCL 32–23–1 simply provides that, "[a] person may not drive or be in *actual physical control* of any vehicle while" having 0.10 percent or more by weight of alcohol in his blood or while under the influence of an alcoholic beverage. (emphasis added). The statute says nothing about actual physical control *with the intention to drive* the vehicle. Thus, there is no statutory support for Kitchens' argument that specific intent to drive is an element of actual physical control of a vehicle. *See, State v. Grotzky*, 222 Neb. 39, 382 N.W.2d 20 (1986) (an element of criminal intent is not a part of the proof under statute prohibiting operating or actual physical control of vehicle while under influence of alcohol where statutory language did not include intent element).

■ Moreover, the elements of actual physical control we defined in *Hall, supra,* also fail to contain any reference to a specific intent to drive the vehicle. In fact, our analysis of the purpose of the actual physical control offense in *Kirby, supra,* leads to a contrary conclusion. In *Kirby,* we observed that "[t]he defendant when arrested may have been exercising *no conscious violation with regard to the vehicle,* still there is a legitimate inference to be drawn that he placed himself behind the wheel of the vehicle and could have at any time started the automobile and driven away." *Kirby,* 262 N.W.2d at 51–2 (quoting *Hughes,* 535 P.2d at 1024). In this case, Kitchens had the keys in his pocket. Under our settled law, all that is necessary to establish actual physical control of a vehicle is a showing that the vehicle was operable and that the defendant was in a position to manipulate the controls which would cause it to move.

Based upon the above analysis, we do not find the specific intent to drive to be an element of the offense of actual physical control of a vehicle while under the influence of alcohol. Having reached this conclusion, however, we share the concerns expressed by the Appellate Court of Illinois in *People v. Cummings,* 176 Ill.App.3d 293, 125 Ill.Dec. 514, 530 N.E.2d 672 (1988). In *Cummings,* the Illinois court followed a previous holding that, "in an Illinois driving under the influence prosecution, the State is not required to prove the defendant's intent to put the vehicle into motion ... so a sleeping defendant's intent is irrelevant in determining whether the State met its burden of proof." *Cummings,* 125 Ill. Dec. at 517, 530 N.E.2d at 675. Nevertheless, the court went on to state:

> We are concerned, however, that through time and expansion by subsequent court rulings, [*People v. Guynn,* 33 Ill.App.3d 736, 338 N.E.2d 239 (Ill.App.Ct.1975)] may have become counter-productive to society's goal of providing safe highways....
>
> We can expect that most people realize, as they leave a tavern or party intoxicated, that they face serious sanctions if they drive. While the preferred response would be for such people either to find alternate means of getting home or to remain at the tavern or party without getting behind the wheel until sober, this is not always done. And while we can say that such people should have stayed sober or planned better, that does not realistically resolve this all-too-frequent predicament.
>
> For the intoxicated person caught between using his vehicle for shelter until he is sober or using it to drive home, *Guynn* encourages him to attempt to quickly drive home, rather than to sleep it off in the car, where he will be a beacon to police.
>
> We believe it would be preferable, and in line with legislative intent and social policy, to read more flexibility into *Guynn.* In those rare instances where the facts show that a defendant was furthering the goal of safer highways by voluntarily "sleeping it off" in his vehicle, *and that he had no intent of moving the vehicle,* trial courts should be allowed to find that the defendant was not "in actual physical control" of the vehicle for purposes of section 11–501.

*Cummings,* 125 Ill.Dec. at 517, 530 N.E.2d at 675 (emphasis added).

The soundness of this view is well represented in State, *City of Falcon Heights v. Pazderski,* 352 N.W.2d 85 (Minn.Ct.App. 1984). The defendant had quarreled with his girl friend with whom he lived. He then drove to two nearby taverns where he became intoxicated. He returned home and parked in a parking area adjacent to the garage in a place where he would normally park for the night. He entered the house but after deciding he did not wish to confront his girl friend, the defendant returned to his car and stretched out on the front seat where he fell asleep. Police officers later found the defendant sleeping on the front seat, sitting on the driver's side with his head over toward the passenger side. The car was not running and the keys were not in the ignition. There was no evidence the car had been driven recently. There was no record evidence the defendant had any intention other than sleep-

ing the rest of the night in the car. The defendant later testified he had previous experience sleeping nights in his car during hunting trips. The defendant was convicted for being in physical control of a motor vehicle while under the influence of alcohol. In reversing his conviction, the Minnesota Court of appeals reasoned:

[T]he facts in this case do not support the conclusion that appellant exercised the necessary physical control. Conviction in this case would serve no purpose related to the statute because appellant had arrived home, had slept for about three hours, and had no intention of restarting the vehicle and/or driving any place else. "[T]he 'actual physical control' offense is a preventive measure intended to deter the drunken driver. One who has been drinking intoxicating liquor should not be encouraged to test his driving ability on the highway, even for a short distance, where his life and the lives of others hang in the balance." [*State Dept. of Public Safety v.] Juncewski*, 308 N.W.2d [316] at 320, [Minn. 1981], quoting *State v. Ghylin*, 250 N.W.2d 252, 255 (N.D.1977).

*Schuler* and *Juncewski* are relevant to those fact situations where a drinking driver is found somewhere on a highway road or private property in a setting giving support to a fair inference that the driver was short of his intended destination and, if left alone, might restart the vehicle in an intoxicated state and continue on. Appellant here had parked his car at his own home for the evening, left his motor vehicle, entered his own home and later returned to his car, not with any intention of using or operating it as a motor vehicle but merely using it as a place to get some sleep.

*Pazderski*, 352 N.W.2d at 88.

In contrast with *Pazderski*, the present case is not one of those rare instances where the facts show that the defendant was voluntarily sleeping off the effects of alcohol with no intention of moving the vehicle. Kitchens' vehicle was parked in a convenience store parking lot in close proximity to a city street. Obviously, Kitchens was far short of his intended destination as

there is no indication in the record that he resided at the convenience store. Kitchens had passed out in the driver's seat with his hands still on the steering wheel and with his feet on the floorboard of the driver's side in proximity to the pedals. There were several twelve ounce cans of Budweiser Beer inside the vehicle. Kitchens could not produce a driver's license or proof of insurance. No one else was in the vehicle or near it. Although the vehicle was not running and the keys were not in the ignition, they were within quick and easy reach in Kitchens' pants pocket. At any point, Kitchens might have awakened, pulled the keys out of his pocket, started the vehicle and proceeded on to the nearby street in an inebriated condition, thereby posing a threat to the public. This is the precise risk the actual physical control statute is intended to avoid. *Kirby, supra.* For that reason, we find no error in the trial court's finding that Kitchens was in actual physical control of his vehicle while under the influence of alcohol.

Affirmed.

MILLER, C.J., and HENDERSON, WUEST, SABERS and AMUNDSON, JJ., participating.