#26725-rev & rem-SLZ

**2014 S.D. 55**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

    v.

DONALD LEON NEKOLITE,                    Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
MCCOOK COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE TIMOTHY W. BJORKMAN
Judge

* * * *

MARTY J. JACKLEY
Attorney General

KIRSTEN E. JASPER
Assistant Attorney General
Pierre, South Dakota                    Attorneys for plaintiff
                                      and appellee.


MICHAEL E. UNKE
Salem, South Dakota                    Attorney for defendant
                                      and appellant.

* * * *

ARGUED ON MARCH 26, 2014

OPINION FILED **07/30/14**

#26725

ZINTER, Justice

[¶1.]         Donald Nekolite was convicted in magistrate court of being in "actual physical control" of a vehicle while under the influence of alcohol. The circuit court affirmed. We reverse.

*Facts and Procedural History*

[¶2.]         Donald Nekolite drove to a dance with his girlfriend. They both testified to the same version of the facts. According to their testimony, after drinking heavily at the dance, Nekolite went to his truck to get a cigarette. Nekolite opened the passenger door and reached to the driver's side to get a package of cigarettes. In doing so, he inadvertently bumped the gear shift, causing it to pop into neutral, and the truck rolled into a parked vehicle. There is no dispute that Nekolite's girlfriend had not been drinking: she was the "designated driver" for the evening.

[¶3.]         Police officers who arrived to investigate the accident observed that Nekolite was intoxicated. In contrast to Nekolite's and his girlfriend's testimony, one officer testified that Nekolite told the officer that "[Nekolite] was behind the wheel and that he intended to leave and that he had pressed the clutch in and rolled back into the [other] vehicle." Nekolite was arrested and charged with "driving" or being in "actual physical control" of a vehicle while under the influence of alcohol, in violation of SDCL 32-23-1.[1]

---

1.      SDCL 32-23-1 provides, in relevant part:

        No person may drive or be in actual physical control of any
        vehicle while:

(continued . . .)

[¶4.]     In a bench trial in magistrate court, the sole question was whether Nekolite was in "actual physical control" of his vehicle. The State argued "that [Nekolite] was in a position to manipulate and control [one of the controls of the vehicle], that being the stick shift. We therefore have actual physical [control.]" Nekolite argued that "reaching in to get his cigarettes from the passenger side" did not constitute actual physical control of a vehicle. The magistrate court based its decision on language from *State v. Kitchens,* 498 N.W.2d 649 (S.D. 1993) (per curiam). Citing *Kitchens,* the magistrate court stated that "[a]ll that is necessary to establish actual physical control" is a "showing that the vehicle was operable and that the defendant was in position to manipulate controls which would cause it to move." The court then entered the following oral findings of fact:

> I find in this case that the vehicle was operable, as it was driven there. I find that the vehicle was being manipulated by Mr. Nekolite in that he admitted he reached in, struck the gear shift mechanism which caused the vehicle to move, and that is sufficient for purposes of the statute and the case law pursuant to [*Kitchens*] to establish being in physical control of a vehicle . . . .

The court concluded by stating, "[b]ased upon [these] facts[,]" Nekolite was guilty "of being in [actual] physical control of a vehicle" while under the influence of alcohol.

[¶5.]     In his appeal in circuit court, Nekolite argued that the magistrate court's findings of fact controlled, and under those facts, his conduct did not

---

(. . . continued)

> (1) There is 0.08 percent or more by weight of alcohol in that person's blood as shown by chemical analysis of that person's breath, blood, or other bodily substance;
>
> (2) Under the influence of an alcoholic beverage . . . .

constitute actual physical control of a vehicle. The State responded that under the language of *Kitchens* cited by the magistrate court, Nekolite was in actual physical control. The State alternatively argued that the magistrate court's findings of fact were not the controlling facts of the case because the State asserted that the magistrate court only made a general finding of guilt. Assuming that the magistrate court only entered a general finding of guilt, the State contended that the circuit court could also consider the officer's testimony to support the conviction. The State contended that the conviction was supported by the officer's testimony because Nekolite allegedly admitted sitting in the driver's seat, operating the clutch, and intending to leave when his vehicle rolled into the other vehicle.

[¶6.]        The circuit court agreed with the State and affirmed the conviction. The court ruled that Nekolite was in actual physical control of the vehicle under the magistrate court's findings of fact. But the court then ruled that the magistrate court only made a general finding of guilt. Therefore, the circuit court concluded that, sitting as an appellate court, it could consider the officer's testimony to support the conviction.

[¶7.]        Nekolite appeals. He contends that he was not in actual physical control of his vehicle under the magistrate court's findings of fact. He also contends that the circuit court erred in considering the officer's testimony to support the conviction.

*Decision*

[¶8.]        We must initially determine when, under SDCL 23A-18-3, an appellate court may consider a theory of facts that were not found to be the facts by the trial

court. The answer depends on whether the trial court entered findings of fact or whether it only entered a general finding of guilt.

[¶9.] Nekolite argues that the magistrate court made specific factual findings that were consistent with his and his girlfriend's testimony. Nekolite points out that those findings implicitly rejected the officer's conflicting testimony. Therefore, Nekolite contends that appellate review is limited to whether he was guilty under the magistrate court's findings. Nekolite asserts that the circuit court erred in considering the officer's conflicting testimony to affirm the conviction.

[¶10.] The State argues that the magistrate court made no credibility finding or other findings of fact; rather, the court only made a general finding of guilt. The State notes that neither party requested specific factual findings under SDCL 23A-18-3. Therefore, the State contends that the circuit court properly relied on the officer's testimony to affirm the conviction.

[¶11.] In a nonjury criminal trial, the "court shall make a general finding and shall in addition, on request made before submission of the case to the court for decision, find facts specially." SDCL 23A-18-3 (Rule 23(c)). The court's "findings may be oral." *Id.* SDCL 23A-18-3 is similar to Rule 23(c) of the Federal Rules of Criminal Procedure. We have looked to federal case law applying Rule 23(c) when applying SDCL 23A-18-3.[2] *See State v. Catch the Bear*, 352 N.W.2d 640, 646 (S.D. 1984).

---

2.      Rule 23(c) of the Federal Rules of Criminal Procedure provides: "In a case tried without a jury, the court must find the defendant guilty or not guilty. If a party requests before the finding of guilty or not guilty, the court must

(continued . . .)

[¶12.] A general finding within the meaning of Rule 23(c) finds only guilt or innocence. "A general finding of guilt by a judge may be analogized to a verdict of 'guilty' returned by a jury." *United States v. Jenkins*, 420 U.S. 358, 366, 95 S. Ct. 1006, 1011, 43 L. Ed. 2d 250 (1975) (citation omitted), *overruled on other grounds by United States v. Scott*, 437 U.S. 82, 98 S. Ct. 2187, 57 L. Ed. 2d 65 (1978); *see also United States v. Alameh*, 341 F.3d 167, 176 (2d Cir. 2003) ("general verdict of guilty"); *United States v. Lynch*, 162 F.3d 732, 739 (2d Cir. 1998) (Sack, Cir. J., concurring) ("general finding of not guilty"); *United States v. Farrell*, 126 F.3d 484, 491 (3d Cir. 1997) ("general finding of guilt in a non-jury trial").

[¶13.] When a general finding of guilt has been entered under Rule 23(c), an appellate court may "imply findings to support the judgment if evidence, viewed in a light most favorable to the government, so warrants." *United States v. Gant*, 691 F.2d 1159, 1163 (5th Cir. 1982) (citation omitted); *see also Farrell*, 126 F.3d at 491 ("[I]t is proper for an appellate court to imply findings of fact that support a general finding of guilt in a non-jury trial where the evidence so warrants and the defendant has not requested special findings under [Rule 23(c).]"). In contrast, when factual findings have been made, and those findings are not clearly erroneous, an appellate court may not set aside those findings and imply contradictory findings. *See Catch the Bear*, 352 N.W.2d at 646 ("Findings made under Rule 23(c) shall not be set aside unless clearly erroneous."); *cf. State v. Fifteen Impounded Cats*, 2010 S.D. 50, ¶ 26, 785 N.W.2d 272, 282 ("All conflicts in the evidence must be

---

(. . . continued)
state its specific findings of fact in open court or in a written decision or opinion."

resolved in favor of the [trial] court's determinations."); *Pellegrin v. Pellegrin*, 1998 S.D. 19, ¶ 13, 574 N.W.2d 644, 647 ("Where findings of the trial court are based on conflicting testimony . . . we will not disturb them on appeal."). To do so would usurp the factfinder's "function in resolving conflicts in the evidence, weighing credibility, and sorting out the truth." *Cf. State v. Dowty*, 2013 S.D. 72, ¶ 15, 838 N.W.2d 820, 825 (noting that when reviewing the sufficiency of the evidence when a jury is the factfinder, "this Court will not usurp the jury's function in resolving conflicts in the evidence, weighing credibility, and sorting out the truth"); *Hubbard v. City of Pierre*, 2010 S.D. 55, ¶ 26, 784 N.W.2d 499, 511 ("On review, this Court defers to the [trial] court, as fact finder, to determine the credibility of witnesses and the weight to be given to their testimony.").

[¶14.]	In this case, the magistrate court did not make a general finding of guilt similar to a jury's guilty verdict. The court clearly stated that its ultimate finding of guilt was "based upon" its oral findings of fact made on the record.[3]

---

3.	Although neither party requested findings of fact, a court may make findings of fact under Rule 23(c) even if not requested. *See United States v. Hogue*, 132 F.3d 1087, 1090 n.3 (5th Cir. 1998) (citing 2 Charles A. Wright, Federal Practice and Procedure § 374, at 311-12, n.5 (2d ed. 1982)) ("Some judges make findings in all criminal cases in which the jury is waived, even though there has been no request from a party."); *Lynch*, 162 F.3d at 739 (Sack, Cir. J., concurring) (noting that in a nonjury trial, a court may "prepare[] special findings of fact, either because the Government or the defendant requested them or because the judge has elected to make them sua sponte"); *United States v. Figueroa*, 337 F. Supp. 645, 652 (S.D.N.Y 1971) ("[T]he language of Rule 23(c) does not preclude a sua sponte request for proposed findings of fact and conclusions of law."). As a federal court explained, "factual findings by the trial court, even though not required," are "helpful . . . to proper appellate review of a conviction resulting from a non-jury trial[.]" *Jones v. United States*, 16 A.3d 966, 971 (D.C. Cir. 2011) (quoting *United States v. Brown*, 716 F.2d 457, 462 (7th Cir. 1983)); *see also Hogue*, 132 F.3d at 1090 ("The purpose

(continued . . .)

Those findings were specific, and they resolved conflicting testimony on the nature of "control" that Nekolite exerted over the vehicle. The magistrate court only found that Nekolite "reached in [to his vehicle], [and] struck the gear shift mechanism which caused the vehicle to move[.]" These findings implicitly rejected the officer's conflicting testimony. Further, the magistrate court's findings were supported by Nekolite's and his girlfriend's testimony. Because the magistrate court made specific factual findings on conflicting evidence, and because those findings were not clearly erroneous, they were the applicable facts for appellate review.

[¶15.]    The circuit court erred in relying on the officer's testimony to affirm the magistrate court's ultimate finding of guilt. The magistrate court's findings of fact were in direct conflict with the officer's testimony. Yet the circuit court adopted the officer's testimony without ruling the magistrate court's findings clearly erroneous. By adopting the officer's testimony, the circuit court improperly usurped the magistrate court's role as the factfinder.

[¶16.]    Having decided that appellate review of the facts is limited in this case, we next decide whether Nekolite's acts, as found by the magistrate court, constituted "actual physical control" of a vehicle under SDCL 32-23-1. A court's "application of a legal standard to the facts, once determined, is fully reviewable by

---

(. . . continued)
of special findings of facts is to afford the reviewing court a clear understanding of the basis of the trial court's decision."); Fed. R. Crim. P. 23(c) advisory committee's note to the 1977 amend. ("The oral findings, of course, become a part of the record, as findings of fact are essential to proper appellate review on a conviction resulting from a nonjury trial."). Therefore, though not required to make findings of fact absent a request, a trial court may make sua sponte findings under SDCL 23A-18-3.

this Court." *State v. Runge*, 2006 S.D. 111, ¶ 9, 725 N.W.2d 589, 592 (citation omitted).

[¶17.]        Both parties cite South Dakota Criminal Pattern Jury Instruction 3-10-10, which defines "actual physical control."

> A person is in "actual physical control" of a vehicle within the meaning of these instructions when the vehicle is operable and the person is in position to manipulate one or more of the controls of the vehicle that cause it to move or affect its movement in some manner or direction. (It means existing or present bodily restraint, directing influence, domination or regulation of the vehicle.) It means such control as would enable the defendant to actually operate the vehicle in the usual and ordinary manner. "Actual physical control" of a vehicle results, even though the vehicle merely stands motionless, so long as a person keeps the vehicle in restraint or is in a position to regulate its movements.

Although pattern jury instructions are not law, are not authoritative, and are not binding on this Court, they are often grounded in long-standing practice. They have also "been carefully drafted to reflect the law." *State v. Eagle Star*, 1996 S.D. 143, ¶ 15 n.2, 558 N.W.2d 70, 73 n.2. In previous cases, we have specifically approved this pattern instruction defining actual physical control. *See State v. Bordeaux*, 2006 S.D. 12, ¶ 11, 710 N.W.2d 169, 173 (per curiam); *Kitchens,* 498 N.W.2d at 651; *State v. Hall*, 353 N.W.2d 37, 41 n.2 (S.D. 1984). Because neither party takes issue with our prior case law, we continue to apply that definition in this case.[4]

---

4.    The dissent disagrees with the definition because "the Legislature has not adopted the language of the instruction" in SDCL 32-23-1. *See infra* Dissent ¶ 30. But we have adopted and applied the pattern instruction definition since 1984, without legislative change. *See Hall*, 353 N.W.2d at 41 n.2. The more logical inference is that the Legislature has not acted because it has not disagreed with the case law definition. And the dissent does not contend that our definition summarized in the pattern instruction is an incorrect

(continued . . .)

[¶18.]     The State and the dissent contend that Nekolite was guilty under the first sentence of the definition.  They point out that Nekolite's vehicle was operable and that Nekolite manipulated the vehicle's controls when he bumped the gear shift into neutral, which caused the vehicle to move.  Nekolite does not dispute that his vehicle was operable and that he was in a position to manipulate a control that caused the vehicle to move.  However, relying on the second sentence of the pattern instruction, Nekolite contends that he was not in such control of his vehicle as would have enabled him to operate it in its usual and ordinary manner.

[¶19.]     This difference in focus arises from language in *Kitchens*.  That case involved the first sentence.  We stated: "Under our settled law, *all that is necessary* to establish actual physical control of a vehicle is a showing that the vehicle was operable and that the defendant was in a position to manipulate the controls which would cause it to move."  498 N.W.2d at 653 (emphasis added).  But the State, and the courts below, took the "all that is necessary" phrase out of context and failed to consider the entire definition.[5]  Despite the "all that is necessary" phrase, we

---

(. . . continued)

statement of the law or that our cases adopting and applying that language should be overruled.  The dissent also fails to acknowledge that, as a part of our judicial function, we are required to interpret criminal statutes and adopt explanatory definitions.  Indeed, the dissent itself favorably quotes nonstatutory definitional language from *City of Fargo v. Theusch*, 462 N.W.2d 162, 163-64 (N.D. 1990)—"any exercise of dominion or control over a vehicle"—even though the Legislature has not added that language to the statute.  *See infra* Dissent ¶ 31.

5.     The dissent is premised entirely on the contention that "Nekolite's control of the *gear shift* constitutes actual physical control of the vehicle."  *See infra* Dissent ¶ 31 (emphasis added).  Even setting the pattern instruction aside, exclusive focus on the gear shift fails to consider the statutory question: was

(continued . . .)

approvingly quoted the entire pattern instruction in *Kitchens*, which required proof of the defendant's ability to "actually operate the vehicle in the usual and ordinary manner." *See id.* at 651; *see also Bordeaux*, 2006 S.D. 12, ¶ 11, 710 N.W.2d at 173 (approving, after *Kitchens*, the entire pattern instruction definition).

[¶20.] Therefore, for purposes of determining actual physical control of a vehicle, all words and phrases of the definition must be considered. The State must prove that: (1) the defendant's vehicle was operable; (2) the defendant was in a position to manipulate one or more of the controls of the vehicle that cause it to move or affect its movement in some manner or direction; and (3) the defendant's control was such as would enable the defendant to actually operate the vehicle in the usual and ordinary manner.[6] *Bordeaux*, 2006 S.D. 12, ¶ 11, 710 N.W.2d at 173; *Kitchens,* 498 N.W.2d at 651; *Hall*, 353 N.W.2d at 41 n.2. Because Nekolite does

_____

(. . . continued)

> Nekolite exercising actual physical control of the *vehicle*? The trial court found actual physical control only because Nekolite "*struck* the gear shift" while reaching into the vehicle to get a cigarette. (Emphasis added.) There is no dispute that the strike was inadvertent. Inadvertently striking a gear shift may be some evidence of actual physical control. But, by itself, an inadvertent strike of *a gear shift* does not demonstrate actual physical control of the *vehicle.*

> The dissent declines to consider evidence of the defendant's intent, position and relationship with the vehicle, and the presence of another person who was designated to control the vehicle. By finding guilt based only on an inadvertent bump of the gear shift and movement of the vehicle, the dissent adopts strict liability under SDCL 32-23-1 for anyone who has inadvertent physical contact with a vehicle's controls while under the influence of alcohol. The dissent cites no authority for strict liability under SDCL 32-23-1 or our case law.

6. And if the vehicle remains motionless, the state must prove that the "person [kept] the vehicle in restraint or [was] in a position to regulate its movements." *See supra* ¶ 17.

not dispute that his vehicle was operable and that he was in a position to manipulate a control, the only question is whether his control of the vehicle was such that it would have enabled him to operate the vehicle in its usual and ordinary manner.

[¶21.]     We have not addressed what control is necessary to operate a vehicle in its usual and ordinary manner.  The circuit court relied on four cases: *Commonwealth v. Clarke*, 150 N.E. 829 (Mass. 1926); *People v. Wood*, 538 N.W.2d 351 (Mich. 1995); *People v. Pomeroy*, 276 N.W.2d 904 (Mich. Ct. App. 1979); and *Moe v. Motor Vehicles Division*, 889 P.2d 1334 (Or. Ct. App. 1995).  Three of those cases involved facts that provide no guidance on this question.[7]  The only case with similar facts is *Moe*.  However, *Moe* addressed the meaning of "drive," not actual physical control.  *See* 889 P.2d at 1336.

[¶22.]     Although we have not directly addressed what control is necessary to operate a vehicle in its usual and ordinary manner, the principles underlying our actual-physical-control statute provide guidance.  "The foundations of South Dakota law on the 'actual physical control' prohibition are nearly identical to those

---

7.     *See Clarke*, 150 N.E. at 830 (ruling that "operating a motor vehicle" does not require the vehicle's engine to be running, in the case of a defendant who, while seated behind the steering wheel, attempted to lock the transmission but instead caused the vehicle to go into neutral and roll into another vehicle); *Wood*, 538 N.W.2d at 352 (addressing the meaning of "operating a motor vehicle," in the case of a defendant who was found unconscious behind the steering wheel of a running vehicle, with his foot on the brake pedal and the automatic transmission in drive); *Pomeroy*, 276 N.W.2d at 905-06 (addressing whether "operate" requires physical motion of a motor vehicle, in the case of a defendant who was found asleep, slumped over the steering wheel; and in the case of another defendant found asleep in his car, which was in gear, with the engine idling and the rear portion of the car in a ditch).

pronounced by the North Dakota Supreme Court in *City of Fargo* [*v. Theusch*, 462 N.W.2d 162 (N.D. 1990)]." *Kitchens*, 498 N.W.2d at 652. In *City of Fargo*, the court explained: "The purpose of the 'actual physical control' offense is a preventive measure[,] . . . long construed . . . to broadly prohibit any exercise of dominion or control over *a vehicle* by an intoxicated person." 462 N.W.2d at 163-64 (emphasis added) (citation omitted) (internal citations omitted). Thus, "[t]he real purpose of the actual physical control statute is to deter individuals who have been drinking intoxicating liquor from getting into their vehicles, except as passengers." *Id.* at 163 (citation omitted). The actual-physical-control statute "enable[s] the drunken driver to be apprehended before he strikes[,]" because "an intoxicated person seated behind the steering wheel of a motor vehicle is a threat to the safety and welfare of the public." *Kitchens*, 498 N.W.2d at 652 (quoting *Kirby v. Dep't of Pub. Safety*, 262 N.W.2d 49, 51 (S.D. 1978)).

[¶23.]    Thus, in considering the actual-physical-control question, our cases have examined the defendant's position in the vehicle and concomitant ability to control the vehicle. Where actual physical control existed, the defendants were positioned in their vehicles in some way that would have enabled them to actually operate their vehicles in the usual and ordinary manner. *See id.* (involving a defendant found slumped over the steering wheel, with his key in one of his pockets; his vehicle was parked in a convenience store's parking lot, close to a city street; and no one else was present who could have controlled the vehicle unless the defendant first relinquished his control); *State v. Remacle*, 386 N.W.2d 38, 38 (S.D. 1986) (involving a defendant found slumped over the driver's seat, with the key in

the ignition); *Petersen v. Dep't of Pub. Safety*, 373 N.W.2d 38, 39 (S.D. 1985) (involving a defendant found asleep in the front seat, leaning against the driver's door with his legs and feet extended across the front seat, and the key in the ignition); *Hall*, 353 N.W.2d at 42 (involving a defendant found "sitting in the driver's seat and although he was slumped over, the vehicle controls were within his reach; [the defendant] completely dominated the [vehicle], the key was in the ignition, the doors were locked, he could have sat up and driven off at any time and no one else could have controlled the vehicle unless [the defendant] relinquished his control"); *State v. DuBray*, 298 N.W.2d 811, 813 (S.D. 1980) ("Defendant was found alone and asleep on the driver's side; the motor was running and the transmission was still in drive."); *Kirby*, 262 N.W.2d at 52 (involving a defendant found "behind the wheel, albeit perhaps dozing; there was no one else in the vehicle; the motor was running; the parking lights were on; [and] the vehicle was in a position where it could easily have resumed travel on the street"); *State v. MacDonald*, 260 N.W.2d 626, 627 (S.D. 1977) ("[Defendant] was sitting behind the steering wheel of the car, with the motor running and the headlights on.").

[¶24.]     Unlike our previous cases, at the time of this incident, Nekolite was not exercising dominion or control over the vehicle. Unlike the defendants in *Kitchens*, *Hall*, *DuBray*, and *Kirby*, Nekolite had a non-intoxicated designated driver present who was to exercise control of the vehicle. *See Kitchens*, 498 N.W.2d at 652 (finding actual physical control based in part on the fact that "[n]o one else could have had control of the vehicle unless [the defendant] first relinquished his [control]"); *Hall*, 353 N.W.2d at 42 (same); *DuBray*, 298 N.W.2d at 813 ("Defendant

was found alone and asleep on the driver's side [of the vehicle.]"); *Kirby*, 262 N.W.2d at 52 (same). Further, Nekolite's position with respect to the vehicle was not such as would have enabled him to actually operate the vehicle in its "usual and ordinary manner." Although his key was within reach,[8] Nekolite was merely standing outside the vehicle, reaching across the passenger seat, attempting to get a cigarette from the driver's area. The only physical control alleged involved an inadvertent bump of the gear shift as Nekolite was attempting to retrieve his cigarettes from the vehicle. However, reaching across the passenger's seat of a vehicle to the driver's side to get a cigarette, while standing outside the vehicle, neither puts an actor in such control as would enable him to actually operate the vehicle in its usual and ordinary manner nor reflects any exercise of dominion or control over the vehicle.[9] Therefore, we reverse the lower courts' rulings that Nekolite was in actual physical control of the vehicle.

---

8.    The key was in a "cubbyhole . . . by the dash."

9.    Nekolite's inadvertent contact with the gear shift relates to the first, but not the third, element of the actual-physical-control definition. Nevertheless, the dissent purports to apply the third element, reasoning that "movement of the gear shift in this case is control that would enable and did enable Nekolite to 'actually operate the vehicle in the usual and ordinary manner.'" *See infra* Dissent ¶ 32. But it defies common sense to suggest that inadvertently striking the gear shift while standing outside the vehicle, and while reaching from the passenger's side to the driver's side to get a cigarette, constitutes the actual physical control of the vehicle (or the gear shift) that enables the operation of the vehicle "in the usual and ordinary manner."

The dissent also contends that "[i]t makes no sense to say being intoxicated and sleeping in the driver's seat of a vehicle is actual physical control, but being intoxicated and manipulating the gears so the vehicle moves and actually causes property damage is not." *See infra* Dissent ¶ 34. But the finder of fact must consider all the evidence in determining whether a

(continued . . .)

[¶25.] The State, however, argues that Nekolite's acts also meet the definition of "drive" in SDCL 32-23-1. This argument was not presented to the magistrate or circuit courts. The issue before both courts was whether Nekolite violated SDCL 32-23-1 by having actual physical control of his vehicle. "[T]his Court has long held that it will not consider issues for the first time on appeal." *State v. Morse*, 2008 S.D. 66, ¶ 11 n.1, 753 N.W.2d 915, 919 n.1 (citation omitted). We decline to address this issue.

[¶26.] Reversed and remanded with instructions to vacate the judgment of conviction.

[¶27.] GILBERTSON, Chief Justice, and KONENKAMP, Justice, concur.

[¶28.] SEVERSON and WILBUR, Justices, concur in part and dissent in part.

WILBUR, Justice (concurring in part and dissenting in part).

[¶29.] I agree with the majority opinion's conclusion that appellate review of the facts is limited in this case; however, I part company with the majority opinion's conclusion that Nekolite was not in actual physical control of his vehicle.

[¶30.] The majority opinion relies on the definition of actual physical control found in South Dakota Criminal Pattern Jury Instruction 3-10-10. I agree with the

---

(. . . continued)

defendant was in actual physical control of the vehicle. The dissent's result is premised solely on Nekolite's inadvertent bump of the gear shift, without giving any consideration to his position and relationship with the vehicle. All our cases involving actual physical control, however, have considered the defendant's position and relationship with respect to the vehicle. *See supra* ¶ 23. We do the same in this case.

majority opinion that "pattern jury instructions are not law, are not authoritative, and are not binding on this Court[.]" However, I disagree that this Court should rely solely upon the pattern jury instruction to control the analysis of this case and, effectively, add elements to SDCL 32-23-1. By accepting the parties' agreement that the pattern jury instruction controls the analysis of the facts in this case, this Court would effectively give the pattern jury instruction the force of law when the Legislature has not adopted the language of the instruction. The words of SDCL 32-23-1 "must be given their plain meaning and effect." *See Slama v. Landmann Jungman Hosp.*, 2002 S.D. 151, ¶ 5, 654 N.W.2d 826, 827 (citations omitted). The Legislature has clearly provided that "No person may . . . be in actual physical control of any vehicle while" under the influence of alcohol. SDCL 32-23-1. If the Legislature wanted to add the language of the pattern jury instruction to SDCL 32-23-1, then it could have easily done so. And it has had several opportunities to do so in light of our prior cases. Yet, the Legislature has not expressly done so. While the pattern jury instruction may have "been carefully drafted to reflect the law," it is not the law.

[¶31.] Furthermore, North Dakota case law, cited with approval by the majority opinion, establishes that we should construe our actual physical control statute broadly: "We have long construed the actual physical control statute to *broadly prohibit any* exercise of dominion or control over a vehicle by an intoxicated person." *City of Fargo v. Theusch*, 462 N.W.2d 162, 163-64 (N.D. 1990) (emphasis added). Interpreting our statute *broadly* and applying it to the facts of this case, Nekolite's control of the gear shift constitutes actual physical control of the vehicle.

Nekolite's manipulation of the gear shift caused a vehicle to move even though he was not seated in the driver's seat. While our prior cases on actual physical control happen to involve defendants who were located in or near the driver's seat, it should not matter where a defendant is located so long as his actions control the vehicle.

[¶32.] However, even if I were to accept the majority opinion's use and application of the pattern jury instruction to the facts of this case, I would disagree with the outcome. Here, under the third factor of the majority opinion's analysis, Nekolite did have such control as would "enable [him] to actually operate the vehicle in the usual and ordinary manner." The trial court found that "the vehicle was being manipulated by Mr. Nekolite in that he admitted he reached in, struck the gear shift mechanism[,]" which then caused the vehicle to move and damage another vehicle. The usual and ordinary manner of operating a vehicle requires the manipulation of a gear shift mechanism to cause the vehicle to move. And the movement of the gear shift in this case is control that would enable and did enable Nekolite to "actually operate the vehicle in the usual and ordinary manner."

[¶33.] Moreover, Nekolite was in position to control the gear shift in the ordinary and usual manner. Nekolite was leaning over the passenger seat of the vehicle to reach his cigarettes on the driver's side floor by the pedals when he bumped the gear shift into neutral. The trial court did not make a specific finding that Nekolite was "standing outside the vehicle" when he struck the gear shift mechanism. *See supra* Majority Opinion ¶ 24. The fact is that even if Nekolite were "standing outside the vehicle," he still had sufficient control which enabled him to operate the vehicle in the usual and ordinary manner.

[¶34.]   "The purpose of the 'actual physical control' [prohibition] is a preventative measure." *Theusch*, 462 N.W.2d at 163. As a preventative measure, the actual physical control offense protects the safety and welfare of the public. *See supra* Majority Opinion ¶ 22. Because public safety and welfare is our concern, we have held in previous cases that an intoxicated person who is asleep or slumped over in the driver's seat is in actual physical control because he or she could easily awaken and operate the vehicle. It makes no sense to say being intoxicated and sleeping in the driver's seat of a vehicle is actual physical control, but being intoxicated and manipulating the gears so the vehicle moves and actually causes property damage is not.

[¶35.]   In summation, I would rely on a plain reading of the language of SDCL 32-23-1 and not interpret actual physical control so narrowly as to always require that a defendant be seated in the vehicle. In this case, Nekolite's actions and control caused the vehicle to move resulting in damage to the property of another person—clearly threatening the safety and welfare of the public. I would affirm the trial court's ruling that Nekolite was in actual physical control of his vehicle.

[¶36.]   SEVERSON, Justice, joins this special writing.